**In the Matter of Arthur Dee NEWCOMB, and Patricia Rae Newcomb, Debtors.**

**Thomas J. CARLSON, Trustee, Plaintiff,**

v.

**UNITED MISSOURI BANK OF CARTHAGE, and Farmers Home Administration, Defendants.**

**Bankruptcy No. 82–02601–SW.**
**Adv. No. 82–2155–SW.**

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

July 7, 1983.

Thomas J. Carlson, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, Mo., for plaintiff.

Albert D. Johnston, Johnston & Johnston, Carthage, Mo., Linda L. Sybrant, Asst. U.S. Atty., Kansas City, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT FOR PLAINTIFF ON HIS CLAIM FOR TURNOVER OF A CERTAIN SUM CURRENTLY HELD IN ESCROW

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff trustee in bankruptcy requests the turnover of some $21,207.89 which the debtors paid into an escrow account pursuant to an agreement made in the wake of a judgment for the defendant Farmers Home Administration and pending its appeal. The money is still in the possession of the United Missouri Bank of Carthage pursuant to the escrow agreement, but the right of the Farmers Home Administration, pursuant to the agreement, to have payment of the monies accrued on July 15, 1982, when its judgment was affirmed on appeal. Within 90 days thereafter, on August 12, 1982, the bankruptcy proceedings of the debtors were filed.

In its answer to the plaintiff's complaint, the defendant Farmers Home Administration requests, *inter alia,* "dismissal" of the plaintiff's action and the defendant United Missouri Bank of Carthage has expressly requested summary judgment. Under such circumstances, the court may consider granting summary judgment. See Rule 12(b), F.R.Civ.P.

Accordingly, on February 15, 1983, this court set a hearing for February 25, 1983, on the defendant's motion for summary judgment and on the merits of the action. But, stating that they desired to stipulate the facts in this case, the parties requested a continuance, which was granted on condition that the stipulation be filed on or before March 14, 1983. But the stipulation

has not been filed and the parties propose to take a greater time than the court anticipated in which to present the stipulation.

But it would appear from the files and records in this action, based on the motions for summary judgment, that there is no genuine material issue of fact and that the plaintiff trustee in bankruptcy may be entitled to relief as a matter of law. The copy of the governing agreement which is attached to the pleading of the defendant Farmers Home Administration, pertinently provides that:

"In the event the United States shall obtain a final judgment in its favor in a certain case styled *U.S. v. A.D. Newcomb,* presently pending in the United States Court of Appeals for the Eighth Circuit as case # 81–2028 (District Court # 79–5006–CV–SW), the Escrow Agent shall, *forthwith upon being advised by the parties of the fact,* pay over, convey and distribute to the United States, or its designee, the full amount of principal of the escrowed sum, together with such part of the income earned thereon as shall be equal to an interest rate of six percent (6%) per annum earned on a principal sum of $21,207.89 from the date the escrowed funds are deposited with the Escrow Agent to the date of distribution of such funds to the United States or its designee." (Emphasis added.)

According to this document, the Farmers Home Administration had no right to transfer of the monies until after affirmance of the district court judgment on July 15, 1982.

This would be within the 90-day period preceding bankruptcy and, if the transfer is then to be deemed made, then the plaintiff trustee in bankruptcy would have a right to recover the money under the preference statute, unless the defendants can demonstrate that the debtors were solvent as of the date of transfer. Ordinarily, under the Bankruptcy Code, transfers of cash "are perfected against third parties as soon as they are made." 4 Collier on Bankruptcy ¶ 547.45, p. 547–133 (1982). In this case, the transfer has not yet been made to the Farmers Home Administration. The money in the hands of the escrow agent still has the character of property of the debtors which became property of the estate on the date of bankruptcy by operation of section 541 of the Bankruptcy Code. Section 549 of the Bankruptcy Code now prohibits any transfer.

Therefore, the court entered its order on March 29, 1983, directing the defendants to show cause in writing why summary judgment should not be granted. In response to that order, the defendant United States of America raised contentions which appeared to join potential issues of fact in respect to the elements for recovery under §§ 547 and 549 of the Bankruptcy Code and the interpretation of the escrow instrument.[1] Accordingly, the court conducted its evidentiary hearing of this action on June 24, 1983, in Joplin, Missouri. The plaintiff trustee in bankruptcy thereupon appeared personally and as his own counsel and the defendant United States of America appeared by Lin-

---

1. Although the United States contended, in its response to the show cause order, that "(t)he pertinent facts in this case are not in dispute," it went on to assert that "two issues appear to be raised," as follows: "First, since the money in the escrow account had not been physically turned over to the Government at the time Newcomb filed bankruptcy, is that money part of the debtors' estate under 11 U.S.C. section 541 and therefore subject to being avoided by the trustee under 11 U.S.C. section 549 as a postpetition transfer? Second, since the money in the escrow account could not be claimed by the Government until July 15, 1982, within 90 days preceding the filing of bankruptcy, would the transfer on that date constitute a preferential transfer under 11 U.S.C. section 547, and

thereby render it avoidable by the trustee?" The United States asserted that the answer to both questions must be "no" based on the terms of the escrow agreement which somehow caused the Government's interest to vest prior to the 90-day period next preceding bankruptcy. Accordingly, since there may have been a latent ambiguity in the instrument, the court set the hearing in this case. But no evidence of any ambiguity was then presented and, as further elaborated in the text of this memorandum, the agreement seems clear that the money does not vest in the United States until after notice of affirmance on appeal is given—and this could, at the earliest, have been within the 90-day period before bankruptcy.

da Sybrant, Assistant United States Attorney.

The evidence which was then adduced tended to demonstrate that the debtor was insolvent during the 90-day period next preceding the date of bankruptcy[2] and that there is no latent ambiguity in the escrow agreement above averted to.[3]

■ On the basis of the facts thus demonstrated, it cannot be held that any transfer of the $21,207.89 held under the escrow agreement was made prior to the 90-day period next preceding bankruptcy. According to the terms of the governing agreement, as quoted and emphasized above, the monies were *not* to be paid to the United States prior to affirmance of the district court judgment and the giving of notice of that affirmance. The transfer of the escrowed monies cannot therefore be deemed to have taken place prior to the 90th day next preceding bankruptcy, as the United States urges. The governing escrow agreement does not purport in any manner to grant the United States a security interest or other immediately vesting property interest in the escrow monies.[4] And the government's right to possession of the monies was not to accrue until after proper notice of affirmance on appeal. Accordingly, if the transfer is to be deemed to have been made at the time of the affirmance of the district court judgment, it was a preferential transfer, all the elements of § 547 having been met.[5]

■ If the transfer is deemed to have been made subsequent to the date of bankruptcy, it is unauthorized within the meaning of § 549(a) of the Bankruptcy Code and recoverable under that section. When payment of the United States, who is no more than a general unsecured creditor, would result in its being paid more than other creditors of the same rank, the court could not authorize such a postpetition transfer.

■ Nor can it be said that the United States, by virtue of any judgment lien it might have had has the status of a secured creditor in the bankruptcy proceedings. For under the governing contract, any lien rights were postponed and did not attach.[6]

■ Finally, the government argues that the doctrine of "law of the case" requires that the court of bankruptcy regard the monies in escrow as being the property of the United States. It is postulated that the decisions of the United States District Court and the Court of Appeals that held that the monies in escrow were the equivalent of those converted and therefore necessarily held that the same were the property of the United States when they were converted. Therefore, the government contends that the monies in escrow were not the debtor's to transfer. But, whether regarded as an inapposite assertion of the limited doctrine of "law of the case"[7] or of other principles which bind this court in rendering its decision of this case, it can only be observed that the district court judgment did not hold the monies in escrow to be the property of the United States; it simply constituted a general personal judgment in the same sum.[8] It accordingly only created an antecedent obligation which might be paid by the monies here in ques-

---

2. The United States does not contradict this contention. And the trustee is entitled to the presumption of insolvency under section 547(e)(4) of the Bankruptcy Code.

3. See note 1, *supra.*

4. In fact, the clear terms of the escrow agreement are that the escrow agent is not to pay over any money to the United States until resolution of a pending appeal. Otherwise, the money is to be returned to the debtor A.D. Newcomb.

5. See notes 1 and 2, *supra.*

6. See note 4, *supra.*

7. "Law of the case" is a doctrine ordinarily restricted to applicability to a case remanded from an appellate court.

8. A perusal of the district court opinion demonstrates that the judgment was not rendered for the return of specific property, but was rather a general personal judgment. *U.S. v. A.D. Newcomb,* Civil Action No. 79–5006–CV–SW (W.D. Mo.SW.D. August 28, 1981), *affirmed,* 682 F.2d 758 (8th Cir.1982).

tion. This contention must therefore be rejected.

It is therefore

ADJUDGED that judgment be, and it is hereby, entered for plaintiff on his claim for turnover of the monies currently held in escrow.