HANSON, Senior District Judge.
 

 This case arises out of proceedings in bankruptcy. The trustee filed a complaint for turnover of funds claimed by the Farmers Home Administration (FHA) and held by the United Missouri Bank of Carthage. The FHA filed a cross claim against the bank for the funds. The bankruptcy court
 
 [1]
 
 ordered the funds turned over to the trustee and the district court
 
 [2]
 
 affirmed. We reverse.
 

 FACTS
 

 In an action prior to this one, on August 28, 1981, the United States District Court for the Western District of Missouri entered a judgment in favor of the United States against Arthur D. Newcomb for $21,207.89 plus interest at 6 percent from November 1, 1978.
 
 U.S. v. Newcomb,
 
 No. 79-5006-CV-S W (W.D.Mo. August 28, 1981). This judgment was appealed to this court. While the appeal was pending, the parties executed an escrow agreement with the United Missouri Bank of Carthage as escrow agent. Under this agreement, Newcomb placed money satisfying the judgment in escrow. In return, the United States agreed not to levy on the judgment. The escrow agreement provided that if this court affirmed the judgment for the United States, the escrow agent would turn over the principal plus 6 percent interest from the date of deposit to the United States. The agreement further provided that if this court reversed, the escrow agent would return all funds to Newcomb. On July 15,
 
 *624
 
 1982, this court affirmed the judgment for the United States.
 
 U.S. v. Newcomb,
 
 682 F.2d 758 (8th Cir.1982). On August 12, 1982, Arthur D. Newcomb and his wife, Patricia Rae Newcomb, filed for bankruptcy. The escrowed funds have not yet been turned over to the United States and are still in the hands of the escrow agent.
 

 On December 16, 1982, the trustee in bankruptcy filed a complaint for turnover of the escrowed funds, naming the FHA and the escrow agent as defendants. The FHA filed a cross claim against the escrow agent for the escrowed funds. The bankruptcy court entered judgment for the trustee
 
 [3]
 
 and the district court affirmed. The FHA now appeals.
 

 ANALYSIS
 

 The trustee’s complaint for turnover was in three counts. In Count I, the trustee alleged that the escrow agreement could be rejected as an executory contract under 11 U.S.C. § 365. In Count II, the trustee alleged that the transfer of the escrowed funds could be avoided as a preferential pre-petition transfer made within 90 days of the petition for bankruptcy under 11 U.S.C. § 547(b)(4)(A). In Count III, the trustee alleged that his right as a judgment lien creditor under 11 U.S.C. § 544 was superior to any right of the FHA to the escrowed funds.
 

 The courts below analyzed this case under Count II and ignored Counts I and III. This was the correct approach. Count I is inapposite because the escrow involved in this case is something more than an executory contract. It is not clear that the parties could have entered into a valid contract under which the United States promised not to levy on Arthur Newcomb’s property in exchange for New-comb’s promise to pay the judgment if and when this court affirmed. Such a contract might lack consideration from Newcomb under the principle that the performance of a legal duty is not consideration.
 
 See
 
 Restatement (Second) of Contracts, § 73 (1981). However, even assuming that such a contract could have been made, an escrow is something more than a contract — it is a method of conveying property.
 
 See generally,
 
 28 Am.Jur.2d
 
 Escrow
 
 § 1 (1966); 30A C.J.S.
 
 Escrows
 
 § 1 (1965). When property is delivered in escrow the depositor loses control over it and an interest in the property passes to the ultimate grantee under the escrow agreement.
 
 See Forest Hills Construction Co. v. City of Florissant,
 
 562 S.W.2d 322 (Mo.1978); 28 Am. Jur.2d
 
 Escrow
 
 §§ 8, 10 (1966); 30A C.J.S.
 
 Escrows
 
 § 9 (1965); Annot., 141 A.L.R. 1432 (1942). Further, an “executory contract” that can be rejected in bankruptcy is a contract on which performance remains due on both sides at the time of the bankruptcy petition. 2 J. Lewittes, H. Miller, P. Murphy, J. Samet & W. Stern,
 
 Collier on Bankruptcy,
 
 ¶ 365.02 (15th ed. 1984) [hereinafter cited as
 
 Collier on Bankruptcy
 
 ]. In this case, all that remained to be done at the time of the bankruptcy petition was for the escrow agent to turn the funds over to the United States.
 

 As to Count III, the trustee’s rights as a judgment lien creditor apply only where there is some interest to which a judgment lien could attach. 4
 
 Collier on Bankruptcy
 
 ¶¶ 544.02, .03, (15th ed. 1984). When the petition for bankruptcy was filed the condition of the escrow agreement had been fulfilled and Newcomb had no remaining interest in the escrowed funds.
 
 See generally,
 
 28 Am.Jur.2d
 
 Escrow
 
 § 10 (1966); 30A C.J.S.
 
 Escrows
 
 § 10(a) (1965); Annot., 15 A.L.R.2d 870 (1951). Thus, unless the escrow can be otherwise avoided, there is no interest to which a judgment lien could attach and the trustee’s rights as a judgment lien creditor are irrelevant.
 

 The issue in this case thus comes down to whether the escrow can be avoided. The bankruptcy court held that the escrow could be avoided on alternative theories. First, the bankruptcy court reasoned that the transfer of the escrowed funds occurred when the condition of the escrow was met by this court’s affirmance of the
 
 *625
 
 judgment for the United States. Since this occurred within 90 days preceding the petition for bankruptcy, the bankruptcy court concluded that the transfer could be avoided as a preferential pre-petition transfer made within 90 days of the petition for bankruptcy under § 547(b)(4)(A). In the alternative, the bankruptcy court noted that the money was still in the hands of the escrow agent and concluded that any transfer could be avoided as a post-petition transfer under § 549.
 

 On appeal, the FHA argues that the courts below erred in determining when the relevant transfer occurred. The FHA argues that the relevant transfer occurred either when the original district court judgment for the United States was entered or when the escrow agreement was entered into and the funds turned over to the escrow agent. Both these events occurred prior to 90 days before the petition for bankruptcy. It would follow that the transfer of the escrowed funds cannot be avoided, not as a post-petition transfer under § 549 nor as a preferential pre-petition transfer made within 90 days of the petition for bankruptcy under § 547(b)(4)(A).
 
 [4]
 

 The issue of when the relevant “transfer” occurred, within the meaning of the Bankruptcy Code, is a question of law, since there is no dispute as to the historical facts and the only issue is the application of the law to those facts. Since this is a question of law, our review is de novo and is not subject to the “clearly erroneous” standard.
 

 The FHA first argues that the relevant transfer occurred when a lien was created on Arthur Newcomb’s property by virtue of the original district court judgment for the United States. It may be that the original district court judgment created a lien on some of Arthur Newcomb’s property by operation of Missouri law.
 
 See
 
 Mo.Ann.Stat. § 511.350 (Vernon Supp. 1984). The creation of such a lien would constitute a “transfer” within the meaning of the Bankruptcy Code.
 
 See
 
 11 U.S.C. § 101(40);
 
 In re Underwood,
 
 24 B.R. 503 (Bankr.N.D.Miss.1982); 4
 
 Collier on Bankruptcy
 
 ¶ 547.12[1] (15th ed. 1984). However, any transfer of a judgment lien is not what the trustee seeks to avoid in petitioning for turnover of the escrowed funds. Thus any such transfer is irrelevant.
 

 The FHA’s second argument is that the relevant transfer occurred when the escrow agreement was entered into and the escrowed funds turned over to the escrow agent. We agree.
 

 The issue of what interests in es-crowed property are transferred at what point in time is a complex issue under Mis
 
 *626
 
 souri law. At least for some purposes, it is said that “legal title” to escrowed property is transferred only when the condition of the escrow is met.
 
 Morris v. Davis,
 
 334 Mo. 411, 66 S.W.2d 883 (1933) (rule that legal title remains with the depositor until the condition of an escrow is met applied to defeat wrongful delivery by escrow agent and sale to third party with knowledge of the escrow); 28 Am.Jur.2d
 
 Escrow
 
 § 10 (1966); 30A C.J.S.
 
 Escrows
 
 § 9 (1965); Annot., 15 A.L.R.2d 870 (1951); Annot., 141 A.L.R. 1432 (1942). For other purposes, it is recognized that some interest in es-crowed property is transferred to the ultimate grantee under the escrow at the creation of the escrow.
 
 Forest Hills Construction Co. v. City of Florissant,
 
 562 S.W.2d 322 (Mo.1978) (ultimate grantee entitled to dividends earned by escrow account before condition was met where escrow agreement made no provision for dividends). The interest transferred at the creation of an escrow is generally referred to as an “equitable interest.”
 
 See
 
 28 Am. Jur.2d
 
 Escrow
 
 § 10 (1966); 30A C.J.S.
 
 Escrows
 
 § 9 (1965); Annot., 141 A.L.R. 1432 (1942). Finally, it has been held that the transfer of “legal title” that occurs when conditions of an escrow are met can relate back to the creation of the escrow when equity so requires.
 
 See Donnelly v. Robinson,
 
 406 S.W.2d 595 (Mo.1966) (transfer of realty by life tenant and remaindermen via escrow related back to creation of escrow to preserve right of life tenant to compensation where life tenant died between creation of escrow and fulfillment of condition); 30A C.J.S.
 
 Escrows
 
 § 13b (1965); Annot., 117 A.L.R. 61 (1938).
 

 Under the Bankruptcy Code, “transfer” is defined broadly:
 

 “transfer” means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.
 

 11 U.S.C. § 101(40). This definition is broad enough to include both the transfer that occurs when an escrow is created and the transfer that occurs when the condition of an escrow is met. Thus the issue becomes which of these two “transfers” is controlling in this case. In analyzing this issue, we look to the real substance of the interests transferred, not to whether those interests are referred to as “legal title” or “equitable interest.”
 

 When the escrow involved in this case was created the interest transferred to the FHA was a contingent right to the es-crowed funds, that is, a right to the funds if this court affirmed the judgment for the United States. The interest left in New-comb by this transfer was a contingent right to the funds if this court reversed the judgment for the United States.
 
 [5]
 
 Because this transfer was made more than 90 days before the petition for bankruptcy, it cannot be avoided.
 
 [6]
 

 Given the unavoidable transfer that occurred when the escrow was created, the transfer that occurred when the condition of the escrow was met is not the type of transfer that can be avoided. To be avoidable a transfer must deprive the debtor’s estate of something of value which could otherwise be used to satisfy creditors. 4
 
 Collier on Bankruptcy
 
 ¶¶ 547.-
 
 *627
 
 08[2], .20, .21 (15th ed. 1984). Once the escrow was created, the only interest in the escrowed funds remaining in the debtor was a contingent right to the funds if this court reversed the judgment for the United States. This interest is worthless in light of this court’s affirmance of the judgment for the United States. Therefore, the “transfer” of this interest did not deprive the estate of anything of value. It follows that this “transfer” cannot be avoided.
 

 The trustee has argued that the relevant transfer will occur only when the escrowed funds are physically turned over from the escrow agent to the United States. The trustee argues that this transfer can be avoided as a post-petition transfer under § 549. Obviously, this turnover will constitute a physical transfer of the funds from the escrow agent to the United States. However, all interest in the escrowed funds was transferred to the United States when the condition of the escrow was met.
 
 See generally,
 
 28 Am.Jur.2d
 
 Escrow
 
 § 10 (1966); 30A C.J.S.
 
 Escrows
 
 § 10(a) (1965); Annot., 15 A.L.R.2d 870 (1951). Therefore, the physical transfer from the escrow agent to the United States will not be a transfer of “property of the estate,” as is required for an avoidable post-petition transfer under § 549.
 

 As the above analysis shows, the relevant transfer occurred when the escrow agreement was entered into and the funds turned over to the escrow agent. Any prior transfer of a judgment lien is irrelevant to the trustee’s complaint for turnover of the escrowed funds. At the creation of the escrow there was an unavoidable transfer which left the debtor with only a contingent right to the escrowed funds if this court reversed the judgment for the United States. In light of this unavoidable transfer, the transfer that occurred when the condition of the escrow was met is not avoidable because it did not deprive the debtor’s estate of anything of value. The pending physical transfer cannot be avoided because it is not a transfer of “property of the estate.” Because the relevant transfer occurred more than 90 days prior to the petition for bankruptcy, the trustee is not entitled to turnover of the escrowed funds. Rather, the FHA is entitled to the funds under the terms of the escrow agreement.
 
 [7]
 
 Our analysis is in accord with the decision of the Sixth Circuit in
 
 In re Knox Kreations, Inc.,
 
 656 F.2d 230 (6th Cir.1981). In
 
 Knox
 
 the Sixth Circuit held that a payment from an escrow account could not be avoided as a preference because the relevant transfer had occurred when the escrow was created.
 

 As noted in footnote 5, it is undisputed that the trustee is entitled to any interest over 6 percent in the escrow account. Because this is not disputed, our analysis has ignored any interest over 6 percent in the escrow account. However, the ultimate disposition of this case must reflect the trustee’s undisputed right to any such interest.
 

 CONCLUSION
 

 We reverse and remand for further proceedings consistent with this opinion.
 

 [1]
 

 . The Honorable Dennis J. Stewart, Bankruptcy Judge for the Western District of Missouri.
 

 [2]
 

 . The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.
 

 [3]
 

 . The bankruptcy court decision is reported at 32 B.R. 96 (Bankr.W.D.Mo.1983).
 

 [4]
 

 . As an alternative argument on this appeal, the trustee argues that even if the transfer occurred when the FHA argues it did, the transfer could still be avoided as a transfer to an “insider" under § 547(b)(4)(B). However, § 547(b)(4)(B) was not raised below. Even if § 547(b)(4)(B) had been raised below, the FHA could not be found to be an "insider" on the evidence introduced below. The bankruptcy code defines "insider” only by example. 11 U.S.C. § 101(25) provides that if the debtor is an individual, "insider" includes a relative of the debtor or of a general partner of the debtor, a partnership in which the debtor is a general partner, a general partner of the debtor, or a corporation of which the debtor is a director, officer, or person in control. In the legislative history, "insider” is defined as "one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm’s length with the debtor.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 312, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6269; S.Rep. No. 989, 95th Cong.2d Sess. 25, reprinted in 1978 U.S.Code Cong. & Ad.News, 5787, 5810. From the examples in the Code and the definition in the legislative history, it appears that an "insider” is one who does not deal at arm’s length with the debtor. It is conceivable that a creditor could become so involved in the day-today business of a debtor as to become an insider. However, the mere fact that a large creditor has "control” over the debtor, in the sense that the creditor can compel payment of a debt, does not make the creditor an insider.
 
 See In re Jefferson Co.,
 
 25 B.R. 963, 964-65, 970 (Bankr.D.N.J.1982);
 
 In re Yonkers Hamilton Sanitarium Inc.,
 
 22 B.R. 427, 428-30 (Bankr.S.D.N.Y.1982). The evidence introduced below shows some "control” by the FHA, in the sense that the FHA could compel payment of the judgment. However, this is not enough to make the FHA an insider. There is no indication that Newcomb and the FHA did not deal with each other at arm’s length.
 

 [5]
 

 . Newcomb also had an absolute right to interest over 6 percent in the escrow account. However, the FHA does not dispute that the trustee is entitled to any interest over 6 percent in the escrow account. Therefore, our analysis will ignore any interest over 6 percent that may be in the escrow account.
 

 [6]
 

 . For purposes of preferential pre-petition transfers, a transfer is deemed made when it "takes effect between the transferor and the transferee” only if it is "perfected at, or within 10 days after, such time.” 11 U.S.C. 547(e)(2). A transfer of personalty is perfected "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. 547(e)(1)(B). The transfer that occurred when the escrow was created is a type of transfer for which no further perfection is possible or necessary. In terms of the Bankruptcy Code, the transfer was “perfected" when it took effect between the parties.
 
 See generally, 4 Collier on Bankruptcy
 
 ¶ 547.44 at 547-133 (15th ed. 1984). Since it was perfected simultaneously, the transfer involved here is deemed made when the escrow was created.
 

 [7]
 

 . The trustee argues that the money placed in escrow cannot be made subject to the judgment debt of Arthur Newcomb because the money was held by him and his wife as tenants in the entirety. It is true that under Missouri law "a judgment and execution ... against the husband alone ... cannot in any way affect property held by the husband and wife in the entirety."
 
 Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Shackelford,
 
 591 S.W.2d 210, 215 (Mo.App.1979). However, this argument was not raised below. Further, entirety property can be used to satisfy a debt of one tenant with the express or implied "consent, agreement, or acquiescence" of the other tenant.
 
 State ex rel. State Highway Com'n v. Morganstein,
 
 588 S.W.2d 472, 477 (Mo. 1979);
 
 Coffey v. Coffey,
 
 485 S.W.2d 167 (Mo.App.1972). The evidence introduced below showed implied "consent, agreement, or acquiescence” by Mrs. Newcomb in the use of the escrowed funds to satisfy her husband's debt. Mrs. Newcomb did not sign the escrow agreement. However, Mr. Newcomb testified that his wife joined in a note secured by jointly-owned property which was executed to borrow the funds placed in escrow.
 
 Cf. Ray v. Ray,
 
 336 S.W.2d 731, 734 (Mo.App.1960) (“Whenever a portion of an entirety account is withdrawn for the personal use of one of the parties by the consent of the other, there is a change in the character of the ownership as to that part so withdrawn.") reiterated in
 
 State ex rel. State Highway Com’n v. Morganstein,
 
 588 S.W.2d 472, 477 (Mo.1979).