United States Court of Appeals,
Fifth Circuit.

No. 94-10862

Summary Calendar.

In the Matter of Douglas M. KEMP, Debtor.

AFFILIATED COMPUTER SYSTEMS, INC., d/b/a ACS Investors, Inc., Appellant,

v.

Daniel J. SHERMAN, Trustee for Douglas M. Kemp, Debtor, Appellee.

May 18, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before DUHÉ, WIENER and STEWART, Circuit Judges.

PER CURIAM:

Defendant-Appellant Affiliated Computer Systems, Inc. (ACS) appeals from a judgment of the district court, affirming a holding of the bankruptcy court that $50,000 in ACS's possession was property of the bankruptcy estate of the debtor, Douglas M. Kemp, a former employee of ACS, as of the date of Kemp's filing for bankruptcy, and thus was subject to turnover to Kemp's trustee, Plaintiff-Appellee Daniel J. Sherman (the Trustee). Concluding as a matter of law that the money was not held in escrow and that it was property in which Kemp had an ownership interest at the time that he declared bankruptcy, we affirm the district court's ruling.

I

FACTS AND PROCEEDINGS

Kemp was employed by ACS in 1989 as its Vice President for

1

Corporate Development. His compensation consisted of a salary plus commissions earned from Kemp's efforts in arranging acquisitions of other companies by ACS. The employment agreement between Kemp and ACS, setting out the schedule of percentages to be used in determining Kemp's commissions, provided that the amount of commission paid to Kemp could nevertheless vary from the commission calculated under the schedule if the facts of a particular transaction justified deviation. Under the agreement, Darwin Deason, the CEO of ACS, was required to approve any deviation from the commission schedule.

In November 1989, Kemp assisted in ACS's acquisition of OBS Companies, Inc. (OBS), and Deason authorized the payment of $170,000 to Kemp as his total net commission on that transaction. The next month, Atkinson Associates, Inc. (Atkinson) sued ACS, seeking recovery of commissions allegedly due to Atkinson from ACS in connection with the OBS acquisition. Atkinson claimed that Kemp had orally committed ACS to pay a 2% commission to Atkinson for its services in connection with the OBS acquisition.

In a subsequent transaction wholly unrelated to OBS or Atkinson, Kemp assisted ACS in acquiring a substantial interest in Dataplex, Inc. (Dataplex) in January 1990. Deason authorized the payment of $200,000 to Kemp as his commission on the Dataplex transaction but, in addition to standard withholdings, ACS retained $50,000 of this amount pending the settlement or adjudication of the Atkinson lawsuit. Kemp signed ACS's letter of April 3, 1990, which informed him that ACS had authorized a $200,000 commission on

the Dataplex transaction and was withholding $50,000 of that amount until the results of the Atkinson lawsuit were determined.

More than three months later, on June 11, 1990, Kemp filed a voluntary petition under Chapter 7 of the Bankruptcy Code. After Sherman was appointed trustee for Kemp's bankruptcy estate, he instituted an adversary proceeding in bankruptcy court, seeking a turnover of the $50,000 from ACS. The bankruptcy court, trying the case on stipulated facts, found that the $50,000 was property of the estate at the time that Kemp filed for bankruptcy, and the court entered an order for turnover of those funds to the Trustee. On appeal, the district court affirmed the judgment of the bankruptcy court, finding that (1) the Trustee had satisfied his burden of proving that the $50,000 was property of the bankruptcy estate, and (2) ACS had failed to establish that those funds were not subject to turnover. ACS timely appealed the district court's ruling.

## II

### ANALYSIS

We review a bankruptcy court's findings of fact under the clearly erroneous standard, which calls for reversal only if, considering all the evidence, we are left with the definite and firm conviction that a mistake has been made.[1] When the district court has affirmed the bankruptcy court's findings, our review for

---

[1]*See Haber Oil Co. v. Swinehart,* 12 F.3d 426, 434 (5th Cir.1994); *In re Young,* 995 F.2d 547, 548 (5th Cir.1993).

clear error is strict.[2]  Our review of conclusions of law is *de novo.*[3]

ACS asserts that the Trustee has no right to turnover of the $50,000, insisting that those funds were held in escrow as a contingency and that Kemp did not have a vested interest in the funds at the time he filed for bankruptcy.  ACS argues alternatively that, as it had discretionary authority to increase or decrease Kemp's commission as calculated from the schedule, Kemp did not have any interest in the $50,000 at the time he filed for bankruptcy because ACS had not yet released this money to him. After examining the transactions related to the $50,000 at issue, we conclude that neither of ACS's contentions has merit.

Section 541(a)(1)[4] states that the filing of a bankruptcy petition creates an estate comprising "all legal or equitable interests of the debtor in property as of the commencement of the case."[5]  The scope of property rights and interests included in a bankruptcy estate is very broad:  The conditional, future, speculative, or equitable nature of an interest does not prevent it from being property of the bankruptcy estate.[6]  Under Section

---

[2]*See In re Texas Gen. Petroleum Corp.,* 40 F.3d 763, 767 (5th Cir.1994).

[3]*See In re Allison,* 960 F.2d 481, 483 (5th Cir.1992).

[4]Unless otherwise indicated, all statutory citations refer to the United States Bankruptcy Code, 11 U.S.C. § 101-1330 (1992).

[5]11 U.S.C. § 541(a)(1).

[6]*See Haber Oil Co. v. Swinehart,* 12 F.3d 426, 435 (5th Cir.1994);  *Louisiana World Exposition v. Federal Ins. Co.,* 858

4

542(a), property of the estate that is in the possession of another at the time of filing must be turned over on proper demand by the debtor-in-possession or trustee.[7] Our inquiry in the instant case, therefore, is whether the $50,000 in question—clearly being possessed by another (ACS) at the time that Kemp filed for bankruptcy—constituted property of the estate, subjecting it to turnover from ACS to the Trustee.

In opposing turnover of the $50,000, ACS relies on several cases in which bankruptcy courts have found that money held in an escrow account was not property of the debtor's estate. All of those cases, however, involved true escrow accounts that were created by bona fide, legally valid escrow agreements.[8] In determining whether the funds in question were property of the

---

F.2d 233, 245 (5th Cir.1988); *Georgia Pac. Corp. v. Sigma Serv. Corp.,* 713 F.2d 962, 967-68 (5th Cir.1983) (finding that even if funds were subject to constructive trust or other equitable lien, they constituted property of estate to be turned over to debtor-in-possession subject to bankruptcy court's power to recognize suppliers' equitable interest); *In re Anders,* 151 B.R. 543, 545 (Bankr.D.Nev.1993); *In re Anderson,* 128 B.R. 850, 853 (D.R.I.1991).

[7]11 U.S.C. § 542(a) states, "an entity ... in possession, custody, or control, ... of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

[8]*See, e.g., In re Dolphin Titan Int'l Inc.,* 93 B.R. 508, 512 (Bankr.S.D.Tex.1988) (agreement created assurance fund in which debtor had no claim or interest until all prior claims were paid in full, so that fund was not property of estate); *In re Palm Beach Heights Dev. & Sales Corp.,* 52 B.R. 181, 182-83 (Bankr.S.D.Fla.1985) (escrow fund agreement provided that fund's purpose was to assure completion of road and drainage improvements, so debtor had no interest until obligations were complete).

debtors' estates, the bankruptcy courts in those cases looked to the nature and circumstances of the underlying escrow agreements.[9] Our examination of the instant record leads us to conclude that there was no true escrow agreement between Kemp and ACS.

We look to state law—here Texas—to determine whether an escrow agreement existed: The answer to that question determines the parties' respective rights to the $50,000 held by ACS.[10] Under Texas law, an escrow is created only when the parties come to a clear and definite agreement directing that the funds be deposited with a third party and specifying the terms and conditions on which the third party is required to deliver the funds.[11] In the instant case no clear and definite escrow agreement existed between Kemp

---

[9]*See In re All Chemical Isotope Enrichment, Inc.,* 127 B.R. 829, 837 (Bankr.E.D.Tenn.1991) (money placed in fund by party other than debtor was not property of estate, as escrow agreement specified that debtor was not entitled to fund until it acquired ownership of equipment); *In re Cedar Rapids Meats, Inc.,* 121 B.R. 562, 567-70 (Bankr.N.D.Iowa 1990) (fund was not property of estate, as escrow agreement revealed that purpose of fund deposited by debtor was to assure debtor completed its obligation to pay worker's compensation claims accrued). *See also In re Keene Corp.,* 162 B.R. 935, 943 (Bankr.S.D.N.Y.1994) (finding that under New York law, debtor retains legal title of funds placed in escrow, grantee has equitable title, and titles merge when contingency in escrow agreement occurs).

[10]*See Butner v. United States,* 440 U.S. 48, 54-56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Haber Oil Co. v. Swinehart,* 12 F.3d 426, 435 (5th Cir.1994) (substantive nature of property rights held by a bankrupt and its creditors is defined by state law).

[11]*See Johnson v. Freytag,* 338 S.W.2d 257, 262 (Tex.Civ.App.—1960); *Tanner v. Imle,* 253 S.W. 665, 669-70 (Tex.Civ.App.—1923).

6

and ACS.  Consequently, ACS's reliance on "escrow funds" cases is misplaced.

The documents purporting to explain ACS's reason for withholding the $50,000 portion of Kemp's Dataplex commission say nothing other than that ACS was retaining that money pending settlement or adjudication of the Atkinson lawsuit.  As the bankruptcy court observed, these documents specify absolutely no terms or conditions that must be fulfilled before the funds may be delivered to ACS or Kemp or anyone else.  More importantly, there is no evidence of any *agreement* specifying how the fund would be applied upon resolution of the Atkinson lawsuit, whether by settlement or judgment.  Kemp's signature on ACS's letter of April 3, 1990, which advised him that $50,000 of his earned commission was being withheld, did not somehow convert that withholding into an escrow agreement.  Kemp did not affirmatively deposit his $50,000 with a neutral third party (or even with ACS for that matter);  ACS just withheld it from him and kept the money in its own account, thereby acting as both stakeholder and claimant.  That ACS (and Kemp, mirroring ACS) labeled the withholding as a "contingency" and as an "escrow fund" in various writings does not change the essential nature of the money as property in which Kemp had an ownership interest, regardless of whether his ownership might have been subject to divestment in the future if the outcome of the Atkinson lawsuit were to prove unfavorable to ACS.

Agreeing with the finding that here no escrow agreement was created between Kemp and ACS, we concur in the bankruptcy court's

7

observation that the Eighth Circuit's ruling in *In re Newcomb*,[12] a leading case holding that monies held in a particular escrow fund were not property of the debtor's estate, is not applicable to the instant case. The *Newcomb* court, applying Missouri law, held that a valid escrow agreement between a debtor and a judgment creditor gave each of them a contingent interest in the escrowed funds: the debtor had a contingent right to the funds if the judgment should be reversed and the judgment creditor had a contingent right to the funds if the judgment should be affirmed.[13] Prior to the *Newcomb* debtor's bankruptcy filing, the judgment in question was affirmed; therefore, the debtor no longer had any interest in the escrowed funds at the time the debtor filed for bankruptcy protection. Consequently, the court reasoned, the funds could not be deemed to be property of the debtor's bankruptcy estate, so that fulfillment of the express condition of the escrow (affirmance of the judgment) did not result in an avoidable transfer of property of the estate.[14]

In contrast, our Texas law analysis of the escrow agreement in *In re Missionary Baptist Foundation of America, Inc.*[15], led us to conclude that the escrowed funds were property of the debtor's estate at the time of bankruptcy. Under the express provisions of the escrow agreement in *Missionary,* the debtor was required to keep an escrow account for capital expenditures on two nursing homes

---

[12]744 F.2d 621 (8th Cir.1984).

[13]*See id.* at 625-27.

[14]*See id.*

[15]792 F.2d 502 (5th Cir.1986).

8

funded for as long as the debtor remained liable on a loan related to the debtor's purchase of the nursing homes.[16]  After the debtor declared bankruptcy, its trustee transferred the mortgaged properties to another entity.  All parties to the transfer, including the original lender on the loan, released the debtor from its loan obligations and expressly reserved to the debtor its rights to the escrowed funds.  We noted that when the debtor was no longer liable for loan payments, its related duty under the escrow agreement to keep funding the escrow account ceased.[17]

The *Missionary* escrow's implicit contingency was that the debtor could not claim the escrowed funds if the debtor remained liable on the loan.  As the debtor was released from its loan obligations, the escrow's contingency—continuing liability on the loan—ceased to exist prior to the debtor's filing for bankruptcy, removing the impediment to the debtor's ownership and right to possession of the funds remaining in escrow and leading us to conclude that the escrow funds were property of the debtor's estate.[18]  We distinguished the circumstances in *Newcomb* and similar

---

[16]*See id.* at 505-06.

[17]*See id.* at 506.

[18]*See id.*  In finding that the funds were property of the estate, we relied on *In re Flannery,* 51 B.R. 697 (Bankr.S.D.Ohio 1985).  The *Flannery* court held that an assignment right placed in escrow by the debtor was part of the debtor's bankruptcy estate.  The escrow agreement in *Flannery* provided that in the event of a default on a partnership loan, the debtor would assign all his interest in the partnership to his partner.  As no default occurred prior to the time of the bankruptcy filing, resulting in an unfulfilled contingency, the court held that the assignment right became part of the bankruptcy estate when the debtor filed for bankruptcy.  *See id.* at 699-700.

cases, observing that the escrow contingencies divesting the debtor of any interest in those cases were fulfilled prior to the bankruptcy filings, so that the escrowed funds could not properly be included in the estates.[19]

Even if we were to assume arguendo that Kemp's assent to ACS's withholding of the $50,000 could somehow be deemed to have created an escrow agreement, we would still be persuaded by our decision in *Missionary* that the $50,000 was property of Kemp's estate. For the putative escrow's contingency—resolution of the Atkinson lawsuit—had not been fulfilled at the time that Kemp filed for bankruptcy protection.[20]

We also reject ACS's alternative argument—clearly hindsight rationalization—that it was exercising its discretionary authority to set the amount of Kemp's total commission in derogation of the percentage schedule when ACS "deducted" the $50,000 from the total amount due. ACS's unilateral action in withholding the $50,000 for its own assurance pending the outcome of the Atkinson lawsuit did not affect the status of those funds as Kemp's pre-petition earned income; neither did that action by ACS magically transmogrify Kemp's ownership interest in his earnings into a contingency. Again, the OBS transaction, which generated the Atkinson lawsuit, and the Dataplex transaction, which generated the commission from

---

[19]*See id.* at 504-06.

[20]*C.f. In re Keene Corp.,* 162 B.R. 935, 943 (Bankr.S.D.N.Y.1994) (finding that debtor was divested of legal title to escrow funds securing judgments that became final prior to bankruptcy filing, so that funds were not property of estate, as debtor then had neither legal or equitable interest).

10

which ACS retained the $50,000, were wholly separate and unrelated. As the bankruptcy court recognized, the relevant ACS documents reflect that Kemp's total commission of $200,000 was unconditionally earned when the Dataplex transaction closed, and that the $200,000 sum *included* the $50,000 which ACS elected to withhold pending resolution of the Atkinson lawsuit. Pursuant to Kemp's employment agreement, Deason validly authorized the whole $200,000 amount, and it was subsequently paid to Kemp net of taxes, advance draws, and the subject $50,000. The discretionary authority that ACS could have exercised in determining the amount of Kemp's commission is therefore irrelevant; clear beyond cavil are the facts that ACS contemporaneously set Kemp's Dataplex commission at $200,000 and recognized that the $50,000 portion at issue was part of his acknowledged earnings.

As a general rule bankruptcy estates enjoy the same rights that the debtor held immediately prior to the filing of bankruptcy.[21] Here, just before he filed for bankruptcy, Kemp had a property right in all commissions that he had earned, but not yet received, including the $50,000 that ACS had withheld from his Dataplex commission. Nothing in the record reflects that ACS's de facto retainage from the validly earned compensation of its employee was subject de jure to permanent retention by ACS upon the future unfavorable settlement or adjudication of the Atkinson lawsuit. More importantly, once Kemp filed for bankruptcy, the

---

[21]*See Bank of Marin v. England,* 385 U.S. 99, 100-02, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966); *In re N.S. Garrott & Sons,* 772 F.2d 462, 466-67 (8th Cir.1985).

11

possibility of divestment evaporated *ipso facto* by virtue of the automatic stay: The $50,000 in which he had an ownership interest constituted part of the bankrupt estate under § 541(a), and the money was subject to turnover under § 542(a).

As the resolution of the Atkinson lawsuit occurred after Kemp's filing, it had no post hoc effect on the inclusion of the $50,000 in the bankrupt estate. Kemp's bankruptcy filing created an estate as of that date, and Kemp was no longer possessed of any authority to transfer or otherwise deal with property of that estate. As a result, Kemp's post-petition action of executing a letter agreement on December 17, 1990, purporting to release the $50,000 to ACS after ACS settled with Atkinson, was void as a matter of law and has no bearing on the instant action. Indeed, when—more than six months after the bankruptcy filing—Kemp thus attempted to "authorize" ACS to apply the $50,000 to the Atkinson lawsuit settlement, those monies had long since become part of the estate. Kemp had no legal power to transfer the funds; in fact, his effort to do so was a technical violation of the automatic stay affecting all estate property.[22]

---

[22]*See* 11 U.S.C. § 362(a)(3) (automatic stay bars act to obtain possession of property of estate); 11 U.S.C. § 362(a)(6) (automatic stay prohibits any act to recover a pre-petition claim against debtor). A trustee may also avoid any unauthorized transfer of property of the estate that occurs after filing. *See* 11 U.S.C. § 549(a)(1), (a)(2)(B). *See also In re Shapiro,* 124 B.R. 974, 980-82 (Bankr.E.D.Pa.1991) (escrow funds were property of debtor's estate, as debtor's post-petition withdrawal of his dispute with creditors was either violative of automatic stay or avoidable as post-petition transfer); *In re Cabrillo,* 101 B.R. 443, 446-47 (Bankr.E.D.Pa.1989) (any attempted setoff by creditor against certificate of deposit that assertedly served as collateral for debtor's loan would have violated automatic stay

In withholding a portion of its employee's rightfully earned commission, ACS appears to have been trying to avoid the need to file a lawsuit against Kemp (or to implead him in the Atkinson suit) for indemnity or contribution in the event ACS was ultimately found liable to Atkinson. But ACS was at most a potential unsecured creditor of Kemp's as a result of his purported civil misdeed vis-à-vis Atkinson in the OBS transaction, completely unrelated to the Dataplex transaction which generated the commission here at issue. Obvious to us is the fact that ACS did not factor in the possibility of Kemp's bankruptcy when it appropriated his $50,000. And ACS never bothered to file a proof of claim in Kemp's bankruptcy proceedings once they were commenced. ACS failed either to have Kemp place his $50,000 in a legally valid escrow account or to file a claim against Kemp to recover indemnification or contribution for its potential losses from the Atkinson lawsuit. Therefore ACS cannot now bootstrap some innominate security position in the contested funds by mischaracterizing the legal nature of its withholding, i.e., by claiming that Kemp's ownership interest in the $50,000 was somehow a "contingent interest," held in escrow, which could not be property of the estate at the time of his bankruptcy filing.[23]

---

if creditor did not first obtain relief from stay).

[23]In contending that the district court erroneously shifted the burden of proof to it, ACS argues that the doctrine of setoff is inapplicable because 1) as Kemp never had any interest in the $50,000, he had no claim that could be set off against ACS and 2) as the Trustee failed to prove that the $50,000 was property of the estate to begin with, the burden of proof never shifted to ACS. ACS's assertions are unavailing given our disposition of

III

CONCLUSION

We agree with the bankruptcy court's holding that the $50,000 withheld by ACS from Kemp's earned commission was, at the time of Kemp's filing, property of the bankruptcy estate and was thus required to be turned over to Trustee pursuant to 11 U.S.C. § 542(a). Accordingly, the district court's affirmance of the bankruptcy court's judgment is

AFFIRMED.

---

the instant case, and we reject its contention that the burden of proof was erroneously shifted. Moreover, the issue whether ACS proved a right of setoff was not raised in the bankruptcy court, which tried the instant case on stipulated facts, and therefore was not appealed to the district court. Thus we need not, and therefore do not, address that issue.