**In re DCRI L.P. NO. 2, INC., Debtor.**

No. 03–31053–SAF–11.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

July 15, 2003.

Kenneth Hill, Quilling, Selander, et al.,
Patrick C. Guillot, Dallas, TX, for Debtor.

Jeffrey S. Lynch, The Lynch Law Firm, Dallas, TX, Stephen A. Roberts, Strasburger & Price, L.L.P., Austin, TX, for Ditto Properties Company.

Elizabeth G. Smith, Davis & Opper, San Antonio, TX, for Comerica Bank Texas.

Kirk D. Dreyer, Bell, Nunnally and Martin, Dallas, TX, for Compass Bank.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

As often happens when litigation goes unresolved for years, subsequent developments muddy what may have once been clear waters, leaving the parties to negotiate risky crosscurrents to attempt to land at distant shores they do not control. DCRI L.P. No. 2, Inc., the debtor, moves the court for authority to pay secured bank claims from funds held in the registry of the court. Ditto Properties Company opposes the motion. The court held a hearing on the motion on June 27, 2003.

Pursuant to an agreed temporary order entered October 24, 1996, in the 114th Judicial District Court of Wood County, Texas, in *Ditto Props. Co. v. U.S.F.G./DHRG L.P. No. 2, Inc. & Moore*, case no 96–419, DCRI L.P. No. 2 deposited $1,500,000 with Joe Burnett, the special master. On January 30, 2003, DCRI L.P. No. 2, the debtor, filed a petition for relief under Chapter 11 of the Bankruptcy Code. On January 31, 2003, the debtor removed the state court litigation to this court, where it is now pending as adversary proceeding no. 03–3161. On April 30, 2003, this court ordered that the funds held by the special master be transferred to the registry of this court. The funds have been transferred to the registry of the court. This court directed that the funds would only be distributed upon order of this court.

The debtor contends that the funds are property of its bankruptcy estate and may be used pursuant to 11 U.S.C. §§ 361 and 363. The debtor further contends that the funds have been pledged as collateral to Comerica Bank–California and Compass Bank. The debtor requests authorization from the court to use the funds to pay the secured claims of both banks, thereby eliminating the accrual of daily interest. Ditto Properties responds that releasing the funds before the resolution of adversary proceeding no. 03–3161 would undermine the intent of the parties evidenced by the agreed temporary order entered by the state court that placed the funds in the possession of the special master.

As a threshold matter, the funds in the registry of the court constitute property of the bankruptcy estate. As a general proposition, the debtor, pursuant to 11 U.S.C. §§ 361 and 363, may use property of the estate. Ditto Properties contends that the agreed temporary order creates an escrow under Texas law. The only reference to an escrow agreement in the court order is found in section IV, par. 2.e., addressing the powers of the special master. That section provides: "[t]he Special Master shall occupy and retain the status of a fiduciary and an escrow agent, and, except as otherwise expressly set forth herein, his powers, rights, and duties shall be equal to but shall not exceed those of an escrow agent."

Under Texas law, an escrow is created only when the parties come to a clear and definite agreement directing that the funds be deposited with a third party and specifying the terms and conditions on which the third party is required to deliver the funds. *Affiliated Computer Sys., Inc. v. Sherman (In re Kemp)*, 52 F.3d 546, 551 (5th Cir.1995). As described below,

the agreed temporary order, executed by counsel for the debtor and Ditto Properties, is neither clear nor definite with regard to the funds held by the special master. Consequently, the agreed temporary order does not create an escrow.

In the first claim for relief in the fifth amended petition, now before this court as adversary proceeding no. 03–3161, Ditto Properties seeks a declaration that USFG/ DHRG L.P. No. 1 owns 899,200 shares of Diversified Corporate Resources, Inc., and that Ditto owns a 45% interest in LP No. 1. Alternatively, Ditto Properties requests a money judgment for 45% of the value of that stock. In the sixth claim for relief, Ditto Properties seeks to impose a constructive trust on the stock. In the twelfth claim for relief, Ditto Properties seeks to rescind a transaction involving the transfer of the stock.

The state court issued a temporary restraining order involving the stock. The parties then negotiated an agreed temporary order, which was entered by the state court. Under the terms of that order, the state court appointed Joe Burnett as a special master to obtain from the debtor the subject stock or, in the alternative, $1,500,000, called the "Cash Deposit." In the event of the sale of the stock, Burnett would hold $1,500,000 from the proceeds as the "Reserved Amount." The court directed Burnett "To hold the [stock] until such time as the first to occur of: (i) an agreement of the parties regarding the [stock]; (ii) an order of this Court; (iii) a trial or final adjudication on the rights of the Parties to this lawsuit; (iv) the resolution of all matters in this lawsuit, at which time [the stock] shall be conveyed back to [the debtor] for $10.00." Agreed temporary order, IV, par. 2.d. The court provided that Burnett "shall occupy and retain the status of a fiduciary and an escrow agent, and, except as otherwise expressly set forth

herein, his powers, rights, and duties shall be equal to but shall not exceed those of an escrow agent." IV, par. 2.e.

The order directed the debtor to transfer the stock to Burnett. However, as an alternative, the court provided: "[n]otwithstanding the above, if a third party is willing to loan [the debtor] sufficient funds to bring the Cash Deposit to $1,500,000.00 and such funds are paid to the Special Master, then such transaction is hereby approved." Agreed temporary order, V, par. 4(b). If Burnett received the $1,500,000 Cash Deposit, the debtor's duties and obligations regarding the stock ceased. The TRO expired upon transfer of the stock or delivery of the Cash Deposit.

This document specifies terms and conditions regarding the stock. The debtor must deliver the stock to the special master. The special master was to hold the stock until the first of four conditions occurred. In holding the stock, the special master acted as a fiduciary or escrow agent. The stock could be sold, but, from the proceeds, the special master would hold a Reserve Account of $1,500,000.

The court order further provided for an alternative to the debtor's obligation to transfer the stock to the special master. The court approved a loan to the debtor sufficient to fund a $1,500,000 Cash Deposit, with the debtor paying those funds to the special master. The Cash Deposit relieved the debtor of the obligation to transfer the stock to the special master. The order is silent regarding the role of the special master with respect to the Cash Deposit. The order contains no clear and definite terms or conditions regarding the funds deposited with the special master. The order is silent concerning the terms and conditions on which the special master is required to deliver the funds. At best, the order is ambiguous concerning the

Cash Deposit. As to the Cash Deposit, the order does not contain the specificity required to constitute an escrow agreement. The debtor deposited the funds with the special master. The funds therefore became property of the bankruptcy estate. 11 U.S.C. § 541(a)

■ However, even if the order does constitute an escrow agreement concerning the Cash Deposit, the debtor held a contingency interest in the funds. The debtor's interest had not been divested prior to the filing of the bankruptcy petition. As a result, the debtor's interest in the funds became property of the bankruptcy estate. 11 U.S.C. § 541(a); *Kemp,* 52 F.3d at 552–54.

■ If not an escrow agreement, the fund held by the special master could be considered in the nature of a supersedeas bond. The debtor was relieved of an obligation to transfer stock to the special master. If the special master held the stock, the order specifically directed that he hold the stock or proceeds from the sale of the stock until the first of four events occurred. As an alternative to the debtor's obligation to deliver the stock to the special master, the court authorized the debtor to obtain a loan and use the proceeds of the loan to fund a Cash Deposit.

Judith A Sanchez, a senior vice president of Comerica Bank–California, testified that a predecessor bank loaned the debtor $1,500,000. The debtor used the proceeds of that loan to fund the Cash Deposit. As with a debtor who posts a supersedeas bond, the debtor retained a reversionary interest in the Cash Deposit. *See Edwards v. Armstrong World Indus., Inc.,* 6 F.3d 312, 316 (5th Cir.1993). As the lawsuit had not been resolved prepetition, that interest became property of the bankruptcy estate. *Id.*

■ court can direct that the property of the estate be released from the registry of the court for use by the debtor. 11 U.S.C. § 542(a); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The court must determine whether to exercise its discretion to release the funds at this stage of the bankruptcy case. Based on the following analysis, the court concludes that release of the funds to the debtor to pay the banks is premature.

Although the agreed temporary order is ambiguous at best concerning the Cash Deposit, common sense dictates that the parties intended for the special master to hold the Cash Deposit in the place of the stock until the first of the four events occurred. The court cannot construe the ambiguous provision absent the testimony of the principals to the agreement, but the court will use common sense in exercising its discretion on the instant motion. In 1997, the state court denied Ditto Properties' claim for rescission on summary judgment. Ditto Properties' constructive trust claim pertains to the stock itself and thus, not to the Cash Deposit. The debtor argues that Ditto Properties cannot maintain its first claim for declaratory relief because that amounts to an artifice to circumvent the rescission decision. Ditto Properties responds that the declaratory judgment claim seeks a declaration of ownership of the stock or, alternatively, a money judgment for the value of the stock. The court has set a trial docket call for the adversary proceeding. The issue cannot be resolved on the instant motion. If Ditto Properties obtains the money judgment, common sense dictates that Ditto Properties intended to look to the Cash Deposit to satisfy the money judgment.

Sanchez testified that the Comerica loan documents contemplated that the debtor would use the loan proceeds to fund the

Cash Deposit. Comerica filed a proof of claim on March 13, 2003, for a secured claim of $280,434.77 plus interest, fees and expenses. Comerica asserts a security interest in the stock held by the debtor and in the debtor's rights to the proceeds held by the special master, now by the court. Sanchez testified that the secured claim is based on a note evidencing a loan to the debtor executed on July 9, 1997, a security agreement covering tangible and intangible personal property and a Uniform Commercial Code financing statement filed July 21, 1997. Under an amended and restated loan and security agreement, the debtor assigned to the bank "all of its right, title and interest to the Special Master Account." Under the agreement, if funds were released, paid or distributed to the debtor or its principal, the funds would be transferred to the bank to be applied to the loan. The debtor agreed to disburse the funds to the bank.

The bank therefore obtained an assignment of whatever interest the debtor had in the special master account. The bank understood that the debtor borrowed the funds to use as the Cash Deposit. The bank must have necessarily assumed that upon deposit with the special master, the debtor's interest in the funds would be subsumed by and determined in the pending litigation. As further security, the bank took a security interest in the stock owned by the debtor.

If the court construes the agreed temporary order to substitute the Cash Deposit for the stock with all provisions of the order concerning the stock applicable to the Cash Deposit, then, arguably, the bank's lien only attaches to the funds upon a declaration that the debtor owned the stock. With such a declaration, the funds would be released to the debtor, but, under the amended and restated loan and security agreement, the funds would be paid to the bank as collateral. But, if Ditto Properties prevailed, the funds would be paid to Ditto Properties, with the debtor having no interest in the funds and hence, the bank would have no security interest in the funds.

On the other hand, if the Cash Deposit is not a substitute for the stock and is only a pre-petition fund of the debtor available pre-petition to pay claims, but now property of the bankruptcy estate, then upon release from the registry of the court, the debtor could only use the funds upon providing adequate protection to the bank. But Ditto Properties would have no claim on the funds.

Depending on the construction of the agreed temporary order and on the adjudication of the adversary proceeding, the court cannot, at this time, determine if the bank is over-secured and entitled to the interest the debtor now seeks to pay the bank. 11 U.S.C. § 506(b). For example, if the court ultimately holds for Ditto Properties and releases the funds to Ditto Properties, the bank's security interest in the stock may not cover the amount of the debt, making the bank under-secured. If, on the other hand, the court releases the funds to the debtor to use as property of the estate or the debtor prevails in the adversary proceeding, the bank will be over-secured and entitled to its interest, fees and expenses. Meanwhile Compass Bank elected to defer presenting evidence of its secured claim until the court orders the funds released to the debtor.

The court has directed the debtor to file a proposed plan of reorganization. The court set a status conference on the plan process for August 6, 2003. The court reminded the debtor that as a debtor in possession it had a fiduciary duty to attempt to resolve the disputes in a plan of reorganization. Meanwhile the court has set a trial docket call in adversary pro-

ceeding no. 03–3161 for September 8, 2003, at 1:30 p.m. With this schedule, the case should be virtually resolved in 90 days.

Under these circumstances, the court will not release the funds from the registry of the court for use by the debtor at this time. The debtor may renew its request if a plan is not confirmed or the adversary proceeding has not been adjudicated to a final judgment by this court by October 7, 2003.

Based on the foregoing,

**IT IS ORDERED** that the motion to pay secured bank claims from funds held in the registry of the court is DENIED without prejudice.