In re MID–SOUTH AUTO BROKERS, INC.

James F. Dowden, Trustee, Plaintiff,

v.

First Security Bank, Defendant.

No. 4:99–BK–40839M.

United States Bankruptcy Court, E.D. Arkansas, Western Division.

April 1, 2003.

Ben F. Arnold, Kemp, Duckett, Spradley, Curry & Arnold, Little Rock, AR, for debtor.

Allen W. Bird, II, Attorney at Law, James F. Dowden, James F. Dowden, James F. Dowden, P.A., Little Rock, AR, trustee.

J. Maurice Rogers, Hilburn Law Firm, N. Little Rock, AR, for creditor.

## MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

On February 19, 1999, three creditors of Mid–South Auto Brokers, Inc. ("Mid–South"), filed an involuntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. Mid–South did not contest the involuntary petition and was adjudicated a debtor by an

order entered March 16, 1999. James F. Dowden, Esq. was appointed Trustee.

On December 4, 2000, the Trustee filed this action against First Security Bank of Searcy ("Bank"). The Trustee alleges causes of action for the recoveries of fraudulent conveyances pursuant to 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550 and preferential transfers pursuant to 11 U.S.C. § 547(b) and 11 U.S.C. § 550.

Trial on the merits was held in Little Rock, Arkansas, on September 4, 2002, after which the matter was taken under advisement.

The following shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The proceedings before the Court are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F) & (H) (2000), and the Court has jurisdiction to enter a final judgment in this case.

### FACTS

Mid–South was a wholesale and retail seller of used automobiles. Owned by Greg Long ("Long"), William Perry ("Perry"), and Blake Scobey ("Scobey"), Mid–South began a banking relationship with the Bank in 1997.

The business relationship between Mid–South and the Bank was described as a "floor plan" or inventory financing arrangement. Mid–South signed a promissory note for a line of credit with the Bank, and the officers of Mid–South— Long, Perry and Scobey—executed personal guarantees to the Bank for Mid–South's debt. As security for the loan, the Bank obtained a pledge of a certificate of deposit in the sum of $37,247.95, and Mid–South signed a combination financing statement and security agreement in favor of the Bank. The document granted a security interest to the Bank in "all inventory" and "all automobiles now owned or hereinafter acquired by MidSouth Auto." (Def.'s Ex. 4.) The combination financing statement-security agreement was filed with the Secretary of State's office on December 22, 1997, and with the Saline County, Arkansas Circuit Clerk's office on January 15, 1998. It secured Mid–South's debt to the Bank of $150,000.00.

In general, once the floor plan was established, a representative of Mid–South would come to the Bank with the title or titles to vehicles Mid–South wanted to purchase. The loan secretary would "book" the loan by preparing a separate note for Mid–South to sign in the agreed amount of the loan, and the loan secretary then took physical possession of the title or titles. The loan proceeds, which were drawn from Mid–South's credit line of $150,000.00, were then deposited to Mid–South's account at the Bank. These proceeds would typically cover the outstanding check already written by Mid–South to the seller of the vehicle to Mid–South.

Thereafter, Mid–South would offer the vehicle for sale and when a sale was consummated, Mid–South would pay the Bank on a particular note from the sale proceeds of automobiles sold. The Bank would release the title to Mid–South which would assign the title to its customer. The customer would then register the title with the Department of Motor Vehicles. Not all transactions were accomplished in this manner, and sometimes duplicate titles were inappropriately issued. Several of the loans were documented in the name of Scobey or Long individually, but the loan proceeds always were paid to Mid–South, and the security for the loans remained as stated previously. Automobiles would remain as unsold inventory for varying periods of time from several weeks to several months.

David Owen testified that he was the loan officer for the Bank who was responsible for the Mid–South account. He testified that Renny Rutledge, CEO of the Bank, had instructed him in the late summer or early fall of 1998 to move the banking relationship with Mid–South out of the Bank. Owen further stated that efforts to move the business out of the Bank were successful, that by the end of 1998 Mid–South had paid all of the indebtedness to the Bank in full, and that the Bank and Mid–South had ceased their business relationship.

### PREFERENCES

The Trustee seeks to recover two different categories of preferences: those preferential transfers that occurred between 90 days and one year before the date the petition was filed and those transfers made on or within 90 days before the petition was filed. The two provisions of the United States Bankruptcy Code implicated in the Trustee's action are 11 U.S.C. § 547 and 11 U.S.C. § 550.

Section 547(b) provides as follows:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider, and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(2000).

Sections 550(a) and (c) provide as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of the property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

.    .    .    .    .

(c) If a transfer made between 90 days and one year before the filing of the petition—

(1) is avoided under section 547(b) of this title; and

(2) was made for the benefit of a creditor that at the time of such transfer was an insider; the trustee may not recover under subsection (a) from a transferee that is not an insider.

11 U.S.C. § 550(a), (c) (2000).

The preferential transfers alleged in the Trustee's complaint are as follows:

| Count III | 11/25/98 | $ 40,722.85 |
|---|---|---|
| Count IV | 11/27/98 | $ 19,454.19 |
| Count VI | 12/01/98 | $ 10,021.10 |
| Count VII | 11/30/98 | $ 13,000.00 |
| Count VIII | 11/19/98 | $ 6,233.97 |
| Count IX & X | 12/02/98 | $ 8,852.33 |
| | | $ 98,284.44 |

## TRANSFERS MADE BETWEEN 90 DAYS AND ONE YEAR BEFORE BANKRUPTCY

■ The Trustee argues that because Perry, Scobey, and Long are guarantors of Mid–South's obligations to the Bank and they are officers and shareholders of Mid–South, they are insiders for the purposes of 11 U.S.C. § 547. Further, the Trustee contends that as guarantors, the three benefitted from the transfers from Mid–South to the Bank that occurred between 90 days and one year prior to the petition filing.[1] Thus, they are liable under 11 U.S.C. § 550(a), and the trustee may recover from the entity for whose benefit the transfer was made.

The Trustee is correct that Perry, Scobey, and Long are insiders of Mid–South and that they received a benefit when Mid–South made the transfers in question to the Bank because their contingent liability to the Bank was reduced by the amount of each payment. However, 11 U.S.C. § 550(c) specifically provides that the trustee may not recover, under the facts in this case, from the transferee who is not the insider.

In 1989, the Seventh Circuit Court of Appeals held that a preferential transfer made between 90 days and one year which benefitted an insider could be recovered from the non-insider transferee. *Levit v. Ingersoll Rand Fin. Corp. (In re V.N.*

*Deprizio Constr. Co.)*, 874 F.2d 1186, 1200–01 (7th Cir.1989) (holding preference recovery period for outside creditors is one year when payment produces benefit for inside creditor). However, 11 U.S.C. § 550 was amended by the Bankruptcy Reform Act of 1994 expressly to overrule the results in *Deprizio*. The amendment applies to all cases filed on or after October 22, 1994. *See* 5 Collier on Bankruptcy ¶ 550.LH n. 8 (Alan N. Resnick & Henry J. Sommer eds., 5th ed. rev.2002) (section 550(c) overrules Deprizio and clarifies that non-insider transferees should not be subject to the preference provisions beyond the 90–day statutory period).

The Trustee does not allege that the Bank is an insider and cites no legal authority in support of the argument that the Bank is liable for transfers it received more than 90 days prior to the petition date. The Bank is entitled to judgment dismissing the complaint as to the allegation of preferences occurring prior to the 90–day statutory period.

## TRANSFERS MADE WITHIN 90 DAYS BEFORE THE PETITION DATE

■ The involuntary petition was filed against Mid–South on February 19, 1999. November 20, 1998 is 90 days prior to the petition date. The alleged preferential transfers which occurred within the 90–day period are as follows:

| 11/25/98 | $ 40,722.85 |
|---|---|
| 11/27/98 | $ 19,454.19 |
| 11/30/98 | $ 8,000.00 |
| 12/01/98 | $ 7,000.00 |
| 12/02/98 | $ 8,852.00 |
| | |
| 8/17/98 | $ 2,666.02 |
| 9/10/98 | $12,000.00 |
| 9/10/98 | $ 7,000.00 |
| 11/05/98 | $ 993.00 |
| 11/19/98 | $ 6,233.97 |

---

1. The Trustee's complaint contains only one allegation of a preferential transfer prior to the 90–day preference period. The Trustee's post trial brief, however, adopts the dates and amounts set forth in Defendant's Exhibit 57. The brief alleges preferential payments occurring before the 90–day period as follows:

As stated previously, the Bank claimed a perfected security interest in all of Mid–South's automobile inventory and equipment by the filing of the combination financing statement and security agreement. Ordinarily, perfection of a secured interest in vehicles in Arkansas is not accomplished by filing a financing statement and security agreement.[2] *In re Jackson,* 265 B.R. 176, 178 (Bankr.W.D.Ark.2001)(perfection of a security interest in a vehicle is provided for by the Motor Vehicle Act); *Commercial Credit Corp. v. Nat'l Credit Corp.,* 251 Ark. 702, 704, 473 S.W.2d 881, 883 (1971) (creditor was not lien encumbrancer as to third parties because of failure to comply with filing requirements of trust receipt to automobile). However, perfection by filing is required in cases where the vehicles are held as inventory. Ark. Code Ann. § 4–9–302(3)(b)(Michie 1991). The Trustee does not dispute the Bank's claim to a perfected security interest in the vehicle inventory while held as inventory nor the Bank's security interest in the certificate of deposit.

The Trustee argues that each preferential payment occurred in connection with the sale of a particular automobile and that each automobile in question was sold before the payment was made. The Trustee concludes, therefore, that the Bank's security interest in each automobile sold had already been cut off by the sale to a customer in the ordinary course of business at the time of each preference payment. As to each automobile in question, the Trustee's argument is correct because once the vehicle is sold, a buyer in the ordinary course of business takes free of the Bank's security interest. *See* Ark.Code Ann. § 4–9–307(1)(Michie 1991); *Franklin v. First Nat'l Bank of Morrill, Neb.,* 848 P.2d 775, 799–80 (Wyo.1993) (citations omitted); James J. White & Robert S. Summers, Uniform Commercial Code § 33–8 (5th ed.2002).

However, there were apparently other vehicles held as part of the inventory sold during the relevant 90–day period. Mid–South's bank statements were introduced showing deposits of more than $980,000.00 in November and $320,000.00 in December. Checks written over the same period covered by the bank statements exhausted the account by December 24, 1998. In 1998, the Bank made 36 separate loans to Mid–South between January 6, 1998, and October 6, 1998. Each individual note was secured by all inventory and the certificate of deposit. The Trustee offered no evidence of the outstanding balance owed by Mid–South to the Bank for any day during the 90–day preference period or on the date of each alleged preferential payment. The record does not reflect the value of the Bank's remaining collateral at any time during the 90–day preference period or on the date of each alleged preferential payment.

Therefore, it is impossible from the evidence presented to determine as of the date of each alleged preferential transfer whether the Bank was fully secured, partially secured or totally unsecured. The fact that Mid–South was able to liquidate its debt to the Bank by the end of December is, in fact, some evidence that the vehicle inventory and certificate of deposit

---

**2.** Section 4–9–302(3)(b) of the Arkansas Code provides:

The filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to: ... any other laws of this state which provide for central filing or which require indication on a certificate of title of such security interests ... but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this chapter ... apply to a security interest in that collateral created by him as debtor .... Ark.Code Ann. § 4–9–302(3)(b)(Michie 1991).

had a value at least equal to Mid–South's debt to the Bank. Since the Trustee has not established that the transfers in question enabled the Bank to recover more than it would have received in a chapter 7 liquidation as required by 11 U.S.C. § 547(b)(5), the Bank is entitled to a judgment dismissing the Trustee's complaint as to alleged preferential transfers occurring within the 90–day statutory period.

### FRAUDULENT CONVEYANCES

■ The Trustee alleges in Counts I, II and V that certain transfers made to First Security were fraudulent to creditors pursuant to 11 U.S.C. § 548. This section in relevant part provides the following:

> (a)(1) the trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
>
> .    .    .    .    .
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1)(2000).

### COUNT I

#### 1995 FORD MUSTANG

Note number 280124971 was executed on October 16, 1997, by Greg Long individ-ually in the principal amount of $22,428.00. The loan proceeds were paid to Mid–South, and the loan was secured by Mid–South's automobile inventory including a 1995 Ford Mustang and the previously mentioned certificate of deposit. The title to the Mustang was assigned to Mid–South by Ford Motor Credit on September 13, 1997. Mid–South transferred $17,600.00 of its money to the Bank on February 13, 1998. A portion of this amount, $11,100.00, was applied in partial payment of note number 280124971 that had been executed by Long in his individual capacity.

The Trustee presented no evidence that Long used Mid–South as a conduit to enable him to receive these proceeds indirectly. Therefore, even though Long and Mid–South may have failed to document the transaction, Long became a creditor of Mid–South in the amount of money lent to him but deposited in Mid–South's account.

The Trustee argues that the payment to the Bank in February 1998 in the sum of $11,100.00 was made with Mid–South funds to pay the personal obligation of Long and, therefore, Mid–South did not receive reasonably equivalent value in exchange for the payments. The Bank contends that the funds obtained by Long were used for the benefit of Mid–South and that Mid–South received value by paying the obligations it owed to Long for the use of the loan proceeds.

"Value" is defined under 11 U.S.C. § 548(d)(2)(A) as "property or satisfaction or securing of a present antecedent debt of the debtor ..." A debtor does not receive reasonably equivalent value from a transfer if the transfer fails to satisfy any debt of the debtor. *Sender v. Buchanan (In re Hedged–Inv. Assocs.)*, 84 F.3d 1286, 1290 (10th Cir.1996). *See also* 5 Collier on

Bankruptcy ¶ 548.05[1] (Alan N. Resnick & Henry J. Sommer eds., 5th ed. rev.2002)(stating that transfers made to benefit third parties are not made for value unless the debtor is also benefitted). A debt is incurred when a debtor becomes legally obligated to pay. *Iowa Premium Serv. Co. v. First Nat'l Bank (In re Iowa Premium Serv. Co.),* 695 F.2d 1109, 1110 (8th Cir.1982)(citing *Barash v. (Public Fin.Corp.),* 658 F.2d 504, 512 (7th Cir. 1981); *In re Ken Gardner F. Sales, Inc.,* 10 B.R. 632, 647 (Bankr.E.D.Tenn.1981); *In re McCormick,* 5 B.R. 726, 731 (Bankr. N.D.Ohio 1980)).

■ A debtor obtains reasonably equivalent value if the transfer satisfies the claim the transferee-creditor had against the debtor. *Pummill v. Greensfelder, Hemker & Gale (In re Richards and Conover Steel Co.),* 267 B.R. 602, 613 (8th Cir. BAP 2001) (stating that equivalent value may be the satisfaction of an antecedent debt of the debtor) (citing *Dietz v. St. Edward's Catholic Church (In re Bargfrede),* 117 F.3d 1078, 1080 (8th Cir.1997) (citing *Leonard v. Norman Vinitsky Residuary Trust (In re Jolly's, Inc.),* 188 B.R. 832, 842 (Bankr.D.Minn.1995)); *Biggs v. United States Nat'l Bank,* 11 B.R. 524, 527 (D.Neb.1980)); *Daly v. Zofia Deptula (In re Carrozzella & Richardson),* 286 B.R. 480, 486 (D.Conn.2002).

In the instant case, although the transfer by Mid–South to the Bank in payment of Long's note to the Bank benefitted Long, the transfer also benefitted Mid–South because it paid Mid–South's obligation to Long. Therefore, Mid–South did receive reasonably equivalent value for the transfer and the Trustee is not entitled to recover $11,100.00 from the Bank as a fraudulent conveyance under 11 U.S.C. § 548.

## COUNTS II AND V

These counts involve note number 280124971 (mentioned under Count I) and note number 280135419 in the sums of $24,428.00 and $13,528.00 respectively. Mid–South paid the sum of $11,505.65 on November 17, 1998 toward note number 280124971 and the sum of $13,785.95 on November 25, 1998 on note number 280135419. In each case, the notes were executed by Greg Long and the loan proceeds were deposited into Mid–South's account. When the transfers were made to the Bank, each transfer satisfied Mid–South's obligation to repay Greg Long for the reason previously set out under Count I, and the Trustee is not entitled to recover the sum of $11,505.65 in Count II and $13,785.95 in Count V.

## CONCLUSION

For the reasons stated above, the Trustee's complaint is dismissed and judgment will be entered in favor of the Defendant on all counts.

IT IS SO ORDERED.