[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11521
Non-Argument Calendar
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 15, 2005
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 03-21609-CV-UUB
BKCY No. 99-40395

In Re:  THE FLORIDA FUND OF CORAL GABLES, LTD.,

Debtor.

_____

MIAMI POLICE RELIEF & PENSION FUND,

Plaintiff-Appellant,

versus

JOEL L. TABAS, as Trustee of the Bankruptcy Estate
of the Florida Fund of Coral Gables, Ltd, a.k.a.
The Florida Fund,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 15, 2005)**

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

The Miami Police Relief and Pension Fund (Police Fund) appeals the decision of the district court that affirmed a judgment entered in favor of the Trustee and against the Police Fund in an adversary proceeding in bankruptcy. The Trustee sued the Police Fund to avoid several preferential transfers from the debtor, the Florida Fund of Coral Gables, Ltd. (Florida Fund), a now-defunct Ponzi scheme operated by a longtime associate of the Police Fund. Because the Police Fund was not entitled to sovereign immunity, an insider relationship existed between the Police Fund and the debtor, and the Police Fund was the proper defendant in this adversary action, we affirm.

## I. BACKGROUND

The Police Fund is a pension plan that is intended to benefit the police officers of the City of Miami. The Police Fund was established under both state law and local ordinance, and it is governed by a board of directors. During the relevant period, Donald Warshaw served as Chief of Police, and in various leadership roles in both city government and the board of the Police Fund.

Ronald Stern was the proprietor of the Florida Fund and a longtime associate of the Police Fund and its directors. Stern and his accounting firm were employed as the accountants for the Police Fund. Stern also served as an investment advisor

2

to the Police Fund. Stern had personal relationships with several directors of the Police Fund, and he served as the personal accountant to some of them.

Stern also had a personal and business relationship with the administrator of the Police Fund, Ruth Miller. Stern and Miller had a personal friendship for three decades. Miller was employed simultaneously by Stern and the Police Fund, and although Stern paid the full salary for Miller, Stern was then reimbursed by the Police Fund for its share. Miller's office was located in the same office space that housed both Stern's personal office and that of the Florida Fund. Transactions between Stern and the Police Fund were regularly handled inside those offices, because Stern and Miller worked in such close proximity.

The Florida Fund was a limited partnership and Ponzi scheme operated by Stern. The Florida Fund undertook no legitimate business or investment activity, but continually bilked the Police Fund and others. Between January 1996 and May 1998, Stern and the Florida Fund defrauded the Police Fund of more than $1.3 million.

In November 1998, the Police Fund commissioned an investigation by outside accountants that uncovered the fraud Stern had committed against the Police Fund. In December 1998, the Florida Fund began to reimburse the Police Fund for some of its losses. Between December 1998 and March 1999, the Florida

3

Fund paid $771,757.19 to the Police Fund in a series of seven payments. Warshaw testified that he considered Stern "a member of the Police family," but Stern had become the black sheep of that family by February 1999, when Warshaw "squeez[ed]" Stern and told Stern that he was "messing with the Police." In May 1999, the Police Fund sued the Florida Fund in state court to recover its remaining losses, and the Police Fund filed a claim against the estate of Stern in a Florida probate court.

In October 1999, an involuntary petition for bankruptcy relief was filed against the Florida Fund. On December 8, 2000, the Police Fund filed a proof of claim in the bankruptcy of the Florida Fund. Joel Tabas was appointed Trustee of the Florida Fund, and he filed this adversary proceeding against the Police Fund to avoid the seven transfers from the Florida Fund to the Police Fund between December 1998 and March 1999.

The bankruptcy court awarded the Trustee $771,757.19 based on the conclusion that the transfers from the Florida Fund to the Police Fund were avoidable preferences, under section 547(b) of Chapter 11. The Police Fund appealed to the district court, which affirmed the judgment of the bankruptcy court. The Police Fund then filed this appeal.

## II. STANDARD OF REVIEW

"As the 'second court of review of a bankruptcy court's judgment,' this Court examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court." In re Issac Leaseco, Inc., 389 F.3d 1205, 1209 (11th Cir. 2004) (quoting In re Club Assocs., 951 F.2d 1223, 1228 (11th Cir. 1992)).  "Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard.  . . .  In contrast, legal conclusions by the bankruptcy court and the district court are reviewed by this court de novo."  In re Club Assocs., 951 F.2d at 1228.

The standard of review for whether a party is an insider, within the meaning of the relevant portions of the Bankruptcy Code "has been the subject of some debate."  In re Krehl, 86 F.3d 737, 742 (7th Cir. 1996).  We agree with the Seventh and Fifth Circuits that "[t]he question under section 101(31) is whether the historical facts found by the bankruptcy court meet the [Bankruptcy] Code's open-ended definition of an insider.  We think that question is properly characterized as a mixed question of law and fact."  Id.; see also In re Holloway, 955 F.2d 1008, 1014 (5th Cir. 1992).

## III. DISCUSSION

The Police Fund makes three arguments on appeal. First, it contends that the Trustee could not sue the Police Fund in an adversary proceeding in federal bankruptcy court based on the sovereign immunity of the Police Fund. Second, the Police Fund argues that the bankruptcy court erred when it concluded that the Police Fund was an insider of the Florida Fund. Third, the Police Fund argues that its members, rather than the directors or the Police Fund itself, were the proper defendants in the adversary action. We address each of these arguments in turn.

### A. The Police Fund Does Not Have Sovereign Immunity Under the Tenth Amendment and State Law.

Florida law purports to make immune from divestment by judicial decree the money contributed to the Police Fund:

> For any municipality, chapter plan, local law municipality, or local law plan under this chapter, the pensions, annuities, or any other benefits accrued or accruing to any person under any municipality, chapter plan, local law municipality, or local law plan under the provisions of this chapter and the accumulated contributions and the cash securities in the funds created under this chapter are exempted from any state, county, or municipal tax of the state and shall not be subject to execution or attachment or to any legal process whatsoever and shall be unassignable.

Fla. Stat. § 185.25. The Florida Supreme Court has held that the money contributed to the Police Fund cannot be reached in an equity suit, under state law, by a private party who sues to recover the police officer's pension in state court.

6

Baron v. Bailey, 275 So. 2d 519, 520 (Fla. 1973). The Police Fund argues that this grant of immunity is "reserved to" the State of Florida by the Tenth Amendment to the United States Constitution. U.S. Const. Amend. X. The Police Fund concedes that it is not entitled to sovereign immunity under the Eleventh Amendment.

The argument of the Police Fund runs squarely against the operative section of the Bankruptcy Code that provides for a waiver of sovereign immunity when the sovereign files a proof of claim: "A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." 11 U.S.C. § 106(b). The Police filed a proof of claim in the bankruptcy of the Florida Fund. That proof of claim "arose out of the same transaction or occurrence" as the complaint that the Trustee filed against the Police Fund. We conclude, therefore, that the Police Fund waived any alleged right to invoke sovereign immunity.

### B. *The Police Fund was an Insider of the Florida Fund.*

We now turn to the argument of the Police Fund that the bankruptcy court erred when it concluded that the Police Fund was an insider of the Florida Fund. "[I]f the debtor is a partnership," an "'insider' includes" the following entities: "(i)

general partner in the debtor; (ii) relative of a general partner in, general partner of, or person in control of the debtor; (iii) partnership in which the debtor is a general partner; (iv) general partner of the debtor; or (v) person in control of the debtor." 11 U.S.C. § 101(31)(C). "By virtue of the nonlimiting term 'includes,' the" definition of "insider" in section 101(31) "is intended to be illustrative rather than exhaustive." In re Krehl, 86 F.3d at 741; see also 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting"). "An 'insider' generally is an entity whose close relationship with the debtor subjects any transaction made between the debtor and such entity to heavy scrutiny." 2 Lawrence P. King, et al. Collier on Bankruptcy ¶ 101.31 at 101-99 (Revised 15th ed. 1996). As the Fifth Circuit concluded, "The cases which have considered whether insider status exists generally have focused on two factors in making that determination: (1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length." In re Holloway, 955 F.2d at 1011.

Both the district court and the bankruptcy court correctly found that the Police Fund was an insider of the Florida Fund. First, no one can seriously dispute the closeness of the relationships between Stern, the principal of the Florida Fund, and the Police Fund and its directors. Second, neither the district court nor the

8

bankruptcy court clearly erred in finding that the transactions between the Florida Fund and the Police Fund were not at arm's length. Third, the record shows that the Police Fund discovered the fraud of the Florida Fund before any other creditor, and based on its longstanding relationship with Stern, the Police Fund was able to obtain the preferential transfers the Trustee sought to avoid.

### C. The Police Fund Is the Proper Defendant.

The final argument of the Police Fund is that the Trustee erroneously sued the Police Fund as an entity and the chairman and secretary of the board of the Police Fund in their capacities as officers of the Police Fund. The Police Fund asserts that the proper defendants are the individual police officers of the City of Miami who are beneficiaries of the Police Fund. This argument is absurd. The Police Fund has offered no authority to support its assertion that the Police Fund cannot pay a judgment entered against it in an adversary proceeding. The Police Fund filed, in its own name, a proof of claim in the bankruptcy of the Florida Fund, and we reject the proposition that the Police Fund may sue, but not be sued, in its own name.

### IV. CONCLUSION

The judgment of the district court is

**AFFIRMED.**

9