# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 05-6047 NE

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Rosen Auto Leasing, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Jerome A. Rosen, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Thomas D. Stalnaker, Trustee, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellant, | * | District of Nebraska |
| | * | |
| v. | * | |
| | * | |
| George Gratton, | * | |
| | * | |
| Defendant - Appellee, | * | |

Submitted: July 6, 2006
Filed: August 2, 2006

Before SCHERMER, FEDERMAN, and VENTERS,  Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Thomas Stalnaker ("Trustee"), Trustee of the Chapter 7 bankruptcy estates of Rosen Auto Leasing, Inc. ("Rosen Auto") and Jerome A. Rosen, appeals the bankruptcy court's judgment in favor of Defendant George Gratton on all counts in his complaint to avoid and recover preferential transfers and fraudulent conveyances arising out of a series of transfers between Rosen Auto, Mr. Gratton, and Mr. Rosen. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm in part and reverse in part.

## ISSUES

The Trustee identifies three issues in his brief on appeal. The first issue is whether the bankruptcy court erred in determining that Mr. Gratton is not an insider of Rosen Auto or of Mr. Rosen for the purpose of avoiding certain transfers as preferential pursuant to 11 U.S.C. § 547(b). We conclude that the bankruptcy court correctly determined that Mr. Gratton is not an insider of the individual or corporate debtor and, therefore, no preferential transfer occurred. The second issue is whether the bankruptcy court erred in determining that Rosen Auto received reasonably equivalent value in exchange for payment of a promissory note and, therefore, a fraudulent conveyance pursuant to 11 U.S.C. § 548 did not occur. We conclude that the bankruptcy court did not err in determining that Rosen Auto received reasonably equivalent value, and, therefore, a fraudulent conveyance did not occur between Rosen Auto and Mr. Gratton. The third issue is whether the bankruptcy court erred in determining that Mr. Gratton took for value and in good faith from Mr. Rosen when Mr. Rosen granted Mr. Gratton a security interest in Mr. Rosen's condominium and, therefore, Mr. Gratton is entitled to retain his lien on Mr. Rosen's condominium pursuant to 11 U.S.C. § 548(c). We conclude that the bankruptcy court erred in determining that Mr. Gratton gave value to Mr. Rosen in exchange for the lien on Mr. Rosen's condominium and, therefore, Mr. Gratton is not entitled to retain the lien on the condominium under Section 548(c).

2

# BACKGROUND

Rosen Auto was in the business of selling and leasing used cars. Mr. Rosen was a major shareholder and the chairman of the board of directors of Rosen Auto. Mr. Rosen and Mr. Gratton first became acquainted in 1973 as members of the same country club. In the early 1990s they each owned condominiums in the same neighborhood in Phoenix, Arizona, and started golfing and dining together with friends several times a week. Their relationship developed into a close personal friendship. During this time, Mr. Gratton began loaning money to Rosen Auto. In 1996, a social confrontation between Mr. Rosen and Mr. Gratton tainted their friendship; however, Mr. Gratton continued to invest in Rosen Auto because of the relatively high yield on the investments.

In January 1999, Mr. Gratton, without seeking advice from a financial advisor and after reviewing only a prospectus distributed by Mr. Rosen, purchased 2,000 preferred non-voting shares of Rosen Auto for $200,000. In December 1999, Mr. Gratton loaned Rosen Auto $300,000 pursuant to an unsecured promissory note (the "Corporate Note") guaranteed by Mr. Rosen. The Corporate Note bore interest at the annual rate of 9.25% and was payable over eight years in monthly payments of principal and interest. The Corporate Note specified that interest was payable both monthly with principal and also on demand. Mr. Rosen believed that the Corporate Note was a demand note; however, Rosen Auto treated the note as a long-term obligation in its books and records. Rosen Auto made monthly payments of principal and interest to Mr. Gratton pursuant to the Corporate Note at the rate of $4,434.02.

Mr. Gratton was never a member of Rosen Auto's board of directors, never held voting rights in the company, and had limited knowledge of Rosen Auto's financial situation.

In late 2001, upon the advice of a financial advisor to diversify his portfolio, Mr. Gratton made a demand on Rosen Auto for full payment of the Corporate Note. Mr. Rosen advised Mr. Gratton that Rosen Auto was lean on cash and suggested that Rosen Auto deliver a check to Mr. Gratton and that Mr. Gratton endorse the check to Mr. Rosen in exchange for a promissory note from Mr. Rosen equal to the amount of the check secured by a deed of trust on Mr. Rosen's condominium in Phoenix. The condominium had a fair market value of $245,000 and was unencumbered.

On January 30, 2002, Rosen Auto issued a check to Mr. Gratton in the amount of $241, 321.26 (the "Check") in full satisfaction of the Corporate Note. Rosen Auto delivered the Check to Mr. Gratton on February 4, 2002. Mr. Gratton endorsed the Check to Mr. Rosen in exchange for a promissory note from Mr. Rosen (the "Personal Note") secured by a deed of trust on Mr. Rosen's condominium. The Personal Note provided for interest at an annual rate of 6.25% and was payable in monthly installments of $1,485.86 in principal and interest for five years with the unpaid balance due on March 2, 2007. Mr. Rosen subsequently endorsed the Check to Rosen Auto which deposited the Check into its own account. The transfer of the Check from Mr. Rosen to Rosen Auto was treated as an unsecured loan from Mr. Rosen to Rosen Auto.

As a result of the transactions among Rosen Auto, Mr. Gratton, and Mr. Rosen, Rosen Auto exchanged an unsecured obligation to Mr. Gratton for an unsecured obligation to Mr. Rosen. Mr. Rosen exchanged an unsecured guarantee to Mr. Gratton for a promissory note to Mr. Gratton secured by his condominium. Mr. Gratton exchanged an unsecured loan to Rosen Auto for a loan to Mr. Rosen secured by Mr. Rosen's condominium.

Rosen Auto was in a precarious financial situation in early 2002. Sales were slow. Cars were being returned at lease expiration with lower resale values than originally forecast. Rosen Auto's bank account had insufficient funds to clear the

Check at the time of its delivery to Mr. Gratton. Rosen Auto's bank had previously provided overdraft protection for Rosen Auto but never in the amount of the Check. The Check was never presented for payment, however, and therefore it is unknown whether the bank would have honored the Check.

On May 31, 2002, Rosen Auto voluntarily filed a Chapter 11 petition. Rosen Auto's case converted to Chapter 7 on September 26, 2002. Meanwhile an involuntary bankruptcy petition was filed against Mr. Rosen on September 13, 2002. Mr. Rosen's case proceeded under Chapter 11 before converting to Chapter 7 in May 2003. The Trustee was appointed Chapter 7 Trustee of both the Rosen Auto bankruptcy estate and Mr. Rosen's personal bankruptcy estate.

On May 28, 2004, the Trustee filed a complaint against Mr. Gratton in the Rosen Auto bankruptcy case to recover the $241,321.26 that Rosen Auto paid to Mr. Gratton in satisfaction of the Corporate Note as a preferential transfer under 11 U.S.C. § 547 and as a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B). On September 2, 2004, the Trustee filed a complaint against Mr. Gratton in Mr. Rosen's personal bankruptcy case to avoid the lien on Mr. Rosen's condominium as a preferential transfer pursuant to 11 U.S.C. § 547 and as a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1)(B). The cases were consolidated for discovery and trial.

At the conclusion of trial, the bankruptcy court determined that Mr. Gratton was not an insider of either the corporation or the individual for preferential transfer purposes. Accordingly, the Trustee could not avoid either transfer because each occurred more than ninety days before the respective bankruptcy petition was filed.

With respect to the fraudulent transfer claims, the bankruptcy court determined that the transfers were not made with actual intent to hinder or delay either debtor's creditors. With respect to the corporate case, the bankruptcy court determined that

because Rosen Auto was released from its obligation under the Corporate Note in exchange for the Check, Rosen Auto received reasonably equivalent value and therefore no fraudulent conveyance occurred.

With respect to the individual case, the bankruptcy court determined that the transfer of the deed of trust in the condominium was a fraudulent conveyance. Mr. Rosen was insolvent at the time of the transfer because the bulk of his estate consisted of shares of Rosen Auto, which the bankruptcy court found to be insolvent at that time. The bankruptcy court determined that the result of this transfer did not increase Mr. Rosen's liabilities since he had personally guaranteed the Corporate Note; however, the transfer depleted the assets of Mr. Rosen's estate because Mr. Gratton gained a security interest in Mr. Rosen's condominium which was previously unencumbered. Therefore, the bankruptcy court determined that the granting of the lien on the condominium was a fraudulent conveyance. However, the bankruptcy court found that Mr. Gratton had taken the security interest for value and in good faith. Therefore, Mr. Gratton was permitted to retain the lien under 11 U.S.C. § 548(c). The bankruptcy court entered judgment in favor of Mr. Gratton on all counts of each complaint. The Trustee appeals that judgment.

**STANDARD OF REVIEW**

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Moon v. Anderson (In re Hixon)*, 387 F.3d 695, 700 (8th Cir. 2004)(*citing Drewes v. Vote (In re Vote)*, 276 F.3d 1024, 1026 (8th Cir. 2002)); *Meeks v. Red River Entertainment of Shreveport (In re Armstrong)*, 285 F.3d 1092, 1096 (8th Cir. 2002); *Brown v. Third National Bank (In re Sherman)*, 67 F.3d 1348, 1353 (8th Cir. 1995).

The appropriate standard of review for a determination of insider status is in dispute. See, e.g. *In re Krehl*, 86 F.3d 737, 742 (7th Cir. 1996); see also *Miami Police*

*Relief & Pension Fund v. Tabas (In re The Florida Fund of Coral Gables, Ltd.)*, 144 Fed. Appx. 72, 74 (11th Cir. 2005); *Koch v. Rogers (In re Broumas)*, 135 F.3d 769 (4th Cir. 1998). We believe this determination is a mixed question of law and fact and not merely a question of fact. *In re Krehl*, 86 F.3d at 742. Nonetheless, we would reach the same result under either standard of review.

We review the bankruptcy court's determination of whether a transfer is made for reasonably equivalent value as a question of fact for clear error. *Jacoway v. Anderson (In re Ozark Rest. Equip. Co., Inc.*, 850 F.2d 342, 344 (8th Cir. 1988); *Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.)*, 267 B.R. 602, 609 (B.A.P. 8th Cir. 2001). We review the bankruptcy court's determination that Mr. Gratton took the lien on the condominium in good faith and for value pursuant to 11 U.S.C. § 548(c) for clear error. *Sherman*, 67 F.3d at 1355.

## DISCUSSION
### Insiders for Preference Purposes:
### Is Mr. Gratton an Insider of Rosen Auto or Mr. Rosen?

A trustee may avoid certain pre-petition transfers as preferential pursuant to 11 U.S.C. § 547(b). Normally, a trustee may only avoid transfers which occurred within the ninety-day period preceding the bankruptcy filing. 11 U.S.C. § 547(b)(4)(A). However, the reach-back period is extended to one year prior to the bankruptcy petition date if the recipient of the transfer is an insider. 11 U.S.C. § 547(b)(4)(B). With respect to an individual debtor, the term "insider" is defined to include a relative of the debtor or of a general partner of the debtor; a partnership in which the debtor is a general partner; a general partner of the debtor; or a corporation of which the debtor is a director, officer, or person in control. 11 U.S.C. § 101(31)(A). With respect to a corporate debtor, the term includes a director of the debtor; an officer of the debtor; a person in control of the debtor; a partnership in which the debtor is a general partner; a general partner of the debtor; or a relative of a general partner, director, officer, or person in control of the debtor. 11 U.S.C.

§ 101(31)(B). Mr. Gratton does not fall within any of the statutorily defined categories of insiders with respect to Mr. Rosen or Rosen Auto. However, the list is illustrative, not exclusive. 11 U.S.C. § 102(3). The court must therefore look beyond the statutory categories to determine if Mr. Gratton is an insider of either the individual or corporate debtor.

An insider is one who has a sufficiently close relationship with the debtor that his or her conduct should be subject to closer scrutiny than those dealing at arms length with the debtor. See H.R. REP. NO. 95-595, at 25 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6269; S.R. REP. NO. 95-989, at 24 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810. See also *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996); *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996). An insider is one who does not deal at arm's length with the debtor. *Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 625 n.4 (8th Cir. 1984); see also *In re Krehl*, 86 F.3d at 742; *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1011 (5th Cir. 1992). Involvement in the day-to-day business of a debtor may elevate a creditor to insider status. *In re Newcomb*, 744 F.2d at 625 n.4. However, the creditor would have to exert control over the debtor before gaining insider status. *Id*. The ability of a creditor to compel payment of a debt is insufficient control to render the creditor an insider. *Id*. In ascertaining insider status, the closeness of the relationship between the parties is also relevant. *In re Krehl*, 86 F.3d at 742; *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1011 (5th Cir. 1992).

In the instant case, the court determined that Mr. Gratton was not an insider of either Mr. Rosen or Rosen Auto. Mr. Gratton had a prior social relationship with Mr. Rosen which had soured years before the transactions in dispute occurred. He had a debtor-creditor relationship with Rosen Auto and with Mr. Rosen as a result of the personal guarantee. Mr. Gratton demanded payment and received the Check from Rosen Auto. At Mr. Rosen's suggestion, Mr. Gratton endorsed the Check to Mr. Rosen in exchange for the Personal Note and the lien on the condominium.

Mr. Gratton never exerted control over Rosen Auto or Mr. Rosen, nor did he have any relationship with either other than a debtor-creditor relationship at all relevant times. The bankruptcy court correctly determined that Mr. Gratton was not an insider of either debtor.

**Reasonably Equivalent Value Under Section 548(a):**
**Did Rosen Auto Receive Reasonably Equivalent Value for the Check?**

A trustee may avoid a transfer as fraudulent if the debtor received less than a reasonably equivalent value in exchange for the transfer and was insolvent on the date of the transfer, became insolvent as a result of the transfer, had unreasonably small capital to conduct its business or transactions, or intended to or believed it would incur debts beyond its ability to pay. 11 U.S.C. § 548(a)(1).[1] The parties do not dispute that Rosen Auto was insolvent on the date it delivered the Check to Mr. Gratton. The Trustee disagrees with the bankruptcy court's finding that Rosen Auto received reasonably equivalent value in exchange for the Check.

To determine whether Rosen Auto received less than reasonably equivalent value in exchange for the Check, we must consider three things. (1) Was value given? (2) If so, was the value given in exchange for the Check? (3) Was what Rosen Auto transferred reasonably equivalent to what Rosen Auto received? *In re Richards & Conover Steel, Co.*, 267 B.R. at 612. For purposes of fraudulent transfer analysis, value includes the satisfaction of an antecedent debt. 11 U.S.C. § 548(d)(2)(A); see

---

[1] This case was filed before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Therefore, all references to the Bankruptcy Code are to the Code as it existed prior to BAPCPA. BAPCPA added an additional alternative to the second prong of the fraudulent conveyance test: the debtor made the transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider under an employment contract and not in the ordinary course of business. 11 U.S.C. § 548(a)(1)(B)(IV). This new subsection has no relevance to the case at issue.

also *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535-36 (1994); *In re Richards & Conover Steel, Co.*, 267 B.R. at 612; *Dowden v. First Security Bank (In re Mid-South Auto Brokers, Inc.)*, 290 B.R. 658, 664-65 ((Bankr. E.D. Ark. 2003). Prior to the delivery of the Check to Mr. Gratton, Rosen Auto had an unsecured obligation to Mr. Gratton pursuant to the Corporate Note. Rosen Auto delivered the Check to Mr. Gratton in exchange for satisfaction of the Corporate Note. The satisfaction of the Corporate Note by payment of the amount thereof constitutes value in exchange for the Check. To paraphrase the Supreme Court, the only remaining question is whether the amount of the debt satisfied by the Check is reasonably equivalent to the worth of the Check conveyed. *BFP v. Resolution Trust Corp.*, 511 U.S. at 536. By delivering the Check to Mr. Gratton, Rosen Auto relieved itself of an outstanding debt equal to the face amount of the Check. Rosen Auto obtained reasonably equivalent value because the Check satisfied Mr. Gratton's claim against it. *In re Mid-South Auto Brokers*, 290 B.R. at 665. Therefore, the bankruptcy court did not err when it determined that the delivery of the Check by Rosen Auto to Mr. Gratton was not an avoidable fraudulent conveyance under 11 U.S.C. § 548(a).

### Taking For Value and In Good Faith Under Section 548(c) with Respect to the Condominium Lien: Is Mr. Gratton Entitled to the Safe Harbor Provisions of Section 548(c)?

The recipient of a fraudulent transfer which is otherwise avoidable under 11 U.S.C. § 548(a) may retain a lien taken for value and in good faith to the extent that such recipient gave value to the debtor in exchange for the lien. 11 U.S.C. § 548(c). In the instant case, the bankruptcy court determined that the transfer of the lien on the condominium to Mr. Gratton was a fraudulent transfer because Mr. Rosen did not receive anything of value when he accepted the Check and therefore Mr. Rosen received less than reasonably equivalent value in exchange for the lien. The Trustee does not dispute this portion of the bankruptcy court's decision.

After determining that the transfer of the lien was an avoidable fraudulent transfer, the bankruptcy court determined that Mr. Gratton took the lien in good faith and for value, and, therefore, permitted him to retain the lien. The Trustee disputes that Mr. Gratton took the lien in good faith and for value.

Prior to the transaction, Mr. Rosen was indebted to Mr. Gratton pursuant to an unsecured guaranty and owned his condominium free and clear. After the transaction, Mr. Rosen was indebted to Mr. Gratton pursuant to the Personal Note and his condominium was subject to a lien securing the indebtedness. Mr. Gratton went from an unsecured creditor to a secured creditor and gave nothing in return. He therefore did not give value in exchange for the lien. To the extent Mr. Gratton did not give value for purposes of determining whether he gave value under 11 U.S.C. § 548(a)(1)(B), he likewise did not give value for purposes of asserting a defense under 11 U.S.C. § 548(c). *Helms v. Roti (In re Roti)*, 271 B.R. 281, 299 (Bankr. N.D. Ill. 2002); *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000). Accordingly, the bankruptcy court's determination that Mr. Gratton is entitled to the transfer for value and in good faith defense of Section 548(c) is reversed.

## CONCLUSION

The bankruptcy court did not err in finding that Mr. Gratton was not an insider of either the individual or corporate debtor for preference purposes under 11 U.S.C. § 547. Likewise, the bankruptcy court did not err in determining that no avoidable fraudulent conveyance occurred between Mr. Gratton and Rosen Auto pursuant to 11 U.S.C. § 548. However, with respect to the fraudulent transfer of the lien on Mr. Rosen's condominium from Mr. Rosen to Mr. Gratton, the bankruptcy court erred when it found that Mr. Gratton received the lien for value and was therefore entitled to retain it under 11 U.S.C. § 548(c). Accordingly, the opinion of the bankruptcy court is affirmed in part and reversed in part.